In re MURRAY INDUSTRIES, INC., et al., Debtor.

SHIPWRIGHTS, JOINERS AND CAULKERS LOCAL 2071 OF THE UNITED BROTHERHOOD OF CARPENTERS, AFL–CIO, Plaintiff,

v.

UNIFLITE, INC., and Murray Industries, Inc., Defendants.

Bankruptcy Nos. 88–7473–8P1 through 88–7488–8P1. Adv. No. 89–321.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 12, 1990.

Shannan Kane, Washington, D.C., Frank Hamilton, for plaintiff.

John Olson, Miami, Fla., for defendants.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 reorganization case and the matter under consideration is a

complaint filed by the Shipwrights, Joiners and Caulkers Local 2071 of the United Brotherhood of Carpenters, AFL–CIO (Plaintiff) for breach of a collective bargaining agreement. The above-captioned adversary proceeding is, in fact, a proceeding to liquidate an undisputed claim against the estate, based on an alleged breach of contract by the Debtor. The matter is raised by a Motion for Summary Judgment filed by the Plaintiff who seeks a judgment in its favor as a matter of law based on the contention that there are no material facts which are in dispute. The following facts are without dispute which are relevant and germane to the motion under consideration.

On September 16, 1986, Uniflite Inc., (Debtor) and Plaintiff entered into a Collective Bargaining Agreement (Agreement) governing the terms and conditions of employment at Uniflite's Bellingham, Washington, facility. (Debtor's Exhibit A).

On or about December 9, 1988, the Debtors filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. On January 27, 1989, virtually all of the Plaintiff's hourly employees were laid off at Uniflite's Bellingham facility. Under the terms of the Agreement, hourly employees were entitled to between 40 and 160 hours of vacation with pay after the first year of employment, depending on their number of years of service with the company. (Debtor's Exhibit A, Article 11, Section 1). Employees who worked less than 1400 hours in a year would have their vacation pay pro-rated accordingly. Employees could not accumulate paid vacation time from year to year. The Agreement also provided "in the event that an employee quits, is dismissed, or is laid off for other than a temporary period, that employee shall be paid all vacation pay earned up to that point". The Debtors have not moved to reject or modify the Agreement, nor have the Debtors officially assumed the Agreement as of this date.

On May 26, 1989, the Plaintiff served a demand on the Debtors to pay all vacation claims immediately. The Plaintiff alleges that § 1113 of the Bankruptcy Code mandates that no provision of the Bankruptcy Code permits the Debtor to disregard the terms of a collective bargaining agreement which has not been modified or rejected in accordance with that Section. Therefore, the Debtor shall be ordered to pay immediately vacation pays earned by the laid-off employees.

■ It is the Plaintiff's contention that 11 U.S.C. § 1113(f) prohibits a Debtor to "unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section" and the Debtor's refusal to pay vacation pay to the laid-off employees required by the Agreement is an alteration of the collective bargaining agreement expressly prohibited by § 1113(f) of the Code.

In support of its position, the Plaintiff relies on *United Steelworkers of America v. Unimet Corp.*, 842 F.2d 879, 129 LRRM 3139 (6th Cir.1988) *cert. denied* —— U.S. ——, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988), which held that § 1113(f) requires the Debtor to comply with all provisions of a collective bargaining agreement, even if that means paying what the Code would otherwise classify as a prepetition claim. The employer in *Unimet* closed its manufacturing plant and laid off all union represented employees ten months before it filed the Chapter 11 petition. It sought to stop paying health and life insurance premiums for retired former employees but it never rejected or formally assumed the collective bargaining agreement. It was unsuccessful in its attempt to reject the agreement. The Sixth Circuit held that § 1113(f) applied to retiree benefits because its plain language prohibits modification of any provision of the collective bargaining agreement without prior Court approval. *Id.* The Plaintiff also relies on *In the Matter of Canton Castings, Inc.*, 103 B.R. 874 (N.D. Ohio 1989), where the Bankruptcy Court granted the Debtor's Motion for Authority to Pay accrued Vacation Benefits following the filing of a Chapter 11 petition. In that case the United States Trustee opposed the motion arguing that vacation pay claims were no more than general unsecured claims which could not be paid absent a confirmed plan of reorganization. The

Court stated that inasmuch as the Debtor had made no effort to reject the collective bargaining agreement, it was bound thereby. The Plaintiff also relies on the case of *In re St. Louis Globe Democrat, Inc.*, 86 B.R. 606 (E.D.Mo.1988) where the Trustee argued that only vacation pay earned between the filing of the petition and the termination of employment was an allowable administrative expense.

In opposing the request of the Plaintiff, the Debtor, while it concedes that the laid-off employees have a valid, enforceable claim in this Chapter 11 case and they are entitled to payment of their earned vacation time, such payment shall only be made pursuant to the applicable provisions of the Bankruptcy Code.

The scheme of treatment of pre- and postpetition claims, including the priority accorded to administrative expenses and earned vacation pay is especially dealt with in the Bankruptcy Code. Section 503 determines prepetition claims which are accorded administrative expense treatment and in turn granted a first priority by § 507(a). Vacation pays earned prepetition are accorded third priority provided they were earned within 90 days preceding the commencement of the case under Title 11 and do not exceed $2,000 per each individual employee.

Thus, it appears that if by virtue of § 1113(f) of the Code, a Chapter 11 debtor must pay vacation pay earned to laid-off employees immediately, this Section is in direct conflict with the treatment of claims established by the Bankruptcy Code, especially with the priority scheme established by § 507 and § 1129(9)(B). This Section provides that if the holder of claims falling in a priority class did not accept a plan, the plan could not be confirmed unless these claims are paid in cash on the effective date of the plan equal to the allowed amount of the claim. Of course, the time to consider confirmation of a plan in this particular case is yet to occur.

In order to resolve this conflict, the Congressional history of the enactment of § 1114 is particularly instructive with regard to the scope of § 1113 and its applica-

tion to the present controversy for two distinct reasons. First, §§ 1113 and 1114 are similar in their operation in that both establish procedures to allow a debtor-in-possession to alter certain contractual obligations. Secondly, retirement benefits, like prepetition vacation benefits, are not executory in nature but represent benefits to be paid from the bankruptcy estate for services rendered prior to the filing of the bankruptcy petition.

In § 1114 of the Code, there is explicit language exempting payment of retirement benefits from other provisions of Title 11 which otherwise might prohibit such payments. The Section also affirmatively mandates the payment of these benefits. The explicit language and the legislative history of § 1114 stand in stark contrast to the absence of any such language in § 1113. The fact that Congress failed to include similar language in § 1113, which would have created an exemption for immediate payment of any wages of benefits due under a collective bargaining agreement, is evidence that Congress did not intend § 1113 to be exempt from the operation of other sections of the Code, including the priorities set forth in § 507(a). *See Bildisco*, 465 U.S. 513, 523, 104 S.Ct. 1188, 1194–95 [Congress' exemption from section 365 of collective bargaining agreements subject to the Railway Labor Act and the lack of a similar exemption to agreements subject to the National Labor Relations Act indicate that Congress did not intend the latter agreements to be exempt.]

One of the central themes of the Bankruptcy Code is equality of distribution. *In re Mammoth Mart*, 536 F.2d 950 (1976), the Court held "if one claimant is to be preferred over others, the purpose should be clear from the statute. To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution, it dilutes the value of the priority for those creditors Congress intended to prefer. *Id., see also United Steelworkers of America, AFL–CIO v. Jones & Lamson Machine Co.*, 75 B.R. 208 (D.Conn.1987), (where Congress has intended to carve out an exception to the Code, it

has done so with clear and specific language). Section 1113 in no way eliminated or modified the provisions of § 507 requiring prioritization of wages and other employment benefits earned prior to the filing of the bankruptcy petition. Section 1113 of the Bankruptcy Code was amended by Congress in response to the Supreme Court's decision in *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1983), which dealt only with the issue of whether an unexpired collective bargaining agreement was an executory contract which could be unilaterally rejected by a debtor-in-possession pursuant to 11 U.S.C. § 365(a), and was not intended to modify the scheme of distribution of the Code.

To accept the proposition urged by the Plaintiff would disrupt the orderly administration of the bankruptcy estate and Congress' intention of encouraging rehabilitation of bankrupt companies.

This Court is satisfied that the better view is one which reconciles § 507 with § 1113 and that § 1113 governs only the conditions under which a Debtor-in-Possession may modify or reject a collective bargaining agreement, but that payment of employment-related prepetition obligations is governed exclusively by § 507. Even accepting, without conceding, that the failure to pay the vacation pay benefits at this time, in fact, modifies or alters the terms of the Agreement in order to preserve the rehabilitative aims of Chapter 11, then § 507 must prevail.

Having concluded that the proper method to treat the claims for vacation pay is pursuant to the scheme of distribution of the Bankruptcy Code, notwithstanding § 1113(f), one must determine the proper manner and treatment to be accorded to these vacation pay claims: 1) allowed as cost of administration; 2) allowed as priority claims; 3) or only general unsecured claims?

■ Considering first whether the claim asserted by the Plaintiff qualifies for a cost of administration priority treatment under § 503, one must determine when the claim arose. This is so because if these claims are prepetition claims, of course, they would not qualify to be treated as cost of administration under § 503 of the Code. The facts before this Court leave no doubt that these are prepetition claims for the following reasons:

Whether or not the claim was to be recognized as a pre- or postpetition claim was considered by the Third Circuit in the case of *Matter of M. Frenville Co., Inc.*, 744 F.2d 332, 336 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985).

In *Frenville*, the indemnity agreement whereby the accounting firm was to be indemnified in case of being sued and held liable was entered into prepetition. The suits filed against the accounting firm were filed postpetition.

The Third Circuit in *Frenville* held that since the right of payment did not exist prepetition, the claim accrued postpetition, therefore, it was not a claim within the meaning of § 101(4)(A) of the Bankruptcy Code.

Subsequent to the *Frenville* decision, the holding was not only criticized by commentators, but expressly rejected by other circuits. *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198 (4th Cir.1988); *In re Black*, 70 B.R. 645 (Bkrtcy.D.Utah, 1986); *Acevedo v. Van Dorn Plastic Machinery Co.*, 68 B.R. 495 (Bkrtcy.E.D.N.Y.1986); *In re Johns–Manville Corp.*, 57 B.R. 680, 686–88 (Bkrtcy.S.D.N.Y.1986); *Matter of Baldwin–United Corp.*, 48 B.R. 901, 902 (Bkrtcy.S.D.Ohio 1985). All of these cases rejected the reasoning of the Third Circuit, *Frenville, supra.* This Court is persuaded that the reasoning of these cases is more sound, and represents the correct interpretation of § 101(4)(A), and *Frenville* is not controlling.

■ In this instance, the fact that the vacation pay may not have become payable under the terms of the collective bargaining agreement until an event occurred postpetition, does not alter the priority scheme. It is now well established that the accrual of a claim for bankruptcy purposes must be determined with reference to bankruptcy law and not state law, and if the right to

payment, which is an indispensable element of a claim under § 101(4)(A) of the Bankruptcy Code, matured and became vested prior to the commencement of a case, the fact that the time of payment is triggered by an event which occurred postpetition does not render such a claim a postpetition claim and is not entitled to be treated as a cost of administration under § 503 of the Bankruptcy Code and in turn treated as a first priority pursuant to § 507(a)(1) of the Bankruptcy Code. This leaves for consideration what is the appropriate treatment for these claims, notwithstanding the provisions of § 1113(f) of the Bankruptcy Code. As noted earlier, § 507(a)(3) expressly deals with vacation pay and provides that vacation pays earned prior to the 90 days commencement of a case are entitled to a third priority, provided, however, that such claims do not exceed the sum of $2,000 of each individual claimant. Thus, pursuant to this provision, the vacation pay claims which met the conditions set forth in § 507(a)(3) shall be accorded third priority and paid pursuant to the provisions of § 1129(a)(9)(B). The remaining claims, if there are any, which are earned outside of the 90–day period, or to the extent they exceed the $2,000 maximum allowable, shall be treated as general unsecured claims.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Plaintiff be, and the same is hereby, denied, and a separate final judgment shall be entered in accordance with the foregoing in favor of the Debtors.

DONE AND ORDERED.