**In re SPIRIT HOLDING COMPANY, INC., et al., Debtor.**

**Local 881, United Food and Commercial Workers Union, Movant.**

**Bankruptcy No. 93 42135–293. Motion No. 228.**

United States Bankruptcy Court, E.D. Missouri, E.D.

June 23, 1993.

I. William Cohen, Pepper, Hamilton & Scheetz, Detroit, MI, for Unsecured Creditors' Committee.

Milton P. Goldfarb, Newman, Goldfarb, Freyman & Stevens, P.C., Clayton, MO, for Creditors' Committee.

Jan Bond, Diekemper, Hammon, Shinners, Trucotte and Larrew, P.C., St. Louis, MO, for Local 655, United Food and Commercial Workers Union.

Jairus M. Gilden, Karmel & Gilden, Chicago, IL, for Local 881, United Food and Commercial Workers Union.

Michael Richman, Mayer, Brown & Platt, New York City, David A. Warfield, Husch & Eppenberger, St. Louis, MO, for Bank Group.

John Collen, Sonnenschein Nath & Rosenthal, Chicago, IL, David A. Sosne, St. Louis, MO, for debtors.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

(1) On March 23, 1993, Central Hardware Company (Central) and Witte Hardware Corporation (Witte), as debtors and debtors in possession (collectively, Debtors), filed petitions under Chapter 11 of the Bankruptcy Code in the District of Delaware.

(2) The Bank Group [1] filed a Motion For Transfer of Venue which the Bankruptcy Court for the District of Delaware granted on April 16, 1993. Pursuant to the Delaware court's order, the case was transferred to the Eastern District of Missouri.

(3) Local 881 of the United Food and Commercial Workers Union (Union) filed a Motion For An Order Requiring Payment of Amounts Owed Under An Arbitration Award (Motion 228).

(4) The Debtor and the Bank Group filed objections to the Union's motion.

(5) On June 23, 1993, the Court held a hearing on Motion 228. The Union asserted that § 1113 of the Bankruptcy Code required the immediate payment of the arbitrator's award to Ms. Dailey. The Bank Group argued that § 507 of the Bankruptcy Code governs the priority to be given payments in bankruptcy and that Congress did not intend to disturb that order when it. enacted § 1113. Finally, the Debtor chose not to assert a position on whether § 1113 required it to pay the arbitration award. Having previously asserted that § 1113 justified its paying certain prepetition commissions to union members, the Debtor declined to take a position on the application of § 1113 in this matter but claimed that the Court should deny the Union's motion as premature because the amount owed to Ms. Dailey had not yet been established.

### FACTUAL BACKGROUND

(1) Before it filed its petition in bankruptcy, the Debtor Central entered into a collective bargaining agreement with the Union (the Agreement).

---

1. The Bank Group is comprised of Generale Bank, New York Branch, as agent, Allied Irish Bank, ABN–AMRO Bank, Banque Nationale de Paris, Banque Paribas, Eaton Vance Prime Rate Reserves, Banque Worms, Societe Generale, Commercial Bank of Kuwait and Banque Internationale a Luxembourg. The Bank Group holds claims against the Debtors in an amount approximating $150 million in senior secured indebtedness.

(2) Central has not proceeded under § 1113 of the Bankruptcy Code to reject the Agreement.

(3) Article 9.20 of the Agreement prohibits Central from discharging employees without just cause and the Agreement's seventh article subjects violations of the Agreement to binding arbitration.

(4) On February 22, 1992, Central discharged from employment Rebecca Dailey, a member of Local 881. Ms. Dailey filed a grievance with the Union regarding her discharge.

(5) Pursuant to the Agreement, the parties submitted Ms. Dailey's case to arbitration. Following a hearing, an arbitrator issued an Opinion and Award that instructed Central to reinstate Ms. Dailey and pay her full back-pay and other lost benefits. A Union representative stated at the hearing on Motion 228 that the award did not specify a monetary sum for Central to pay to Ms. Dailey but, rather, instructed the parties to determine the exact amount Central would pay to Ms. Dailey. The Union's attorney estimated that Central owed Ms. Dailey approximately $27,000.00 in back-pay and other lost benefits. Central's attorney, at the hearing on Motion 228, stated that he believed the Debtor owed Ms. Dailey approximately $19,000.00.

## DISCUSSION

After considering the parties' briefs and the authorities cited therein and arguments made on June 23, 1993, the Court has concluded that it cannot order the Debtor to pay any money to Ms. Dailey at this time.

The Union argued before this Court that § 1113(f) of the Bankruptcy Code which provides that a trustee cannot "unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with" the other subsections of § 1113 (which prescribe the methodology by which a debtor may reject its collective bargaining agreements) requires Central to pay the back-pay and other lost benefits that the arbitrator awarded to Ms. Dailey, without regard to the limits set forth in § 507(a)(3) of the Code. The Union maintained that because the Agreement required arbitration of Ms. Dailey's discharge grievance, Central's failure to immediately pay the damages the arbitrator awarded Ms. Dailey would constitute a unilateral modification of a collective bargaining agreement prohibited by § 1113(f) of the Bankruptcy Code. The Court, however is persuaded by the logic of those courts that have rejected the argument the Union has made.

Chief Judge Paskay, writing for the Bankruptcy Court for the Middle District of Florida held that "[s]ection 1113 in no way eliminated or modified the provisions of § 507 requiring the prioritization of wages and other employment benefits earned prior to the filing of the bankruptcy petition." *Shipwrights, Joiners and Caulkers Local 2071 of the United Brotherhood of Carpenters, AFL–CIO v. Uniflite, Inc. (In re Murray Industries)*, 110 B.R. 585, 588 (Bankr.M.D.Fla.1990). In *Murray Industries* the union claimed that its members were entitled to receive payment of all their vacation benefits under a collective bargaining agreement following the post-petition lay-off of virtually all of the debtor's employees. *Id.* at 586. Local 2071 argued that the debtor's refusal to pay its laid-off employees the amounts due them under their collective bargaining agreement constituted a unilateral modification of that agreement which § 1113(f) of the Code prohibits. *Id.*

In rejecting Local 2071's argument, Chief Judge Paskay noted that if § 1113(f) required the debtor to immediately pay the union members their vacation benefits, then it directly conflicted with §§ 507 and 1129 of the Code which proscribe how claims will be treated in bankruptcy. *Id.* at 587. Because the union's interpretation of § 1113 would create a direct conflict, Chief Judge Paskay examined the history of § 1113 and compared it to § 1114 which exempts the payment of retirement benefits from the other provisions of the Bankruptcy Code that might prohibit their payment. *Id.* The Chief Judge noted that both §§ 1113 and 1114 established procedures by which a debtor can alter certain types of contractual obligations. Judge

Paskay also recognized that Congress used explicit language in § 1114 to exempt the payment of retirement benefits from the other provisions of the Bankruptcy Code which might prohibit their payment but that Congress did not use analogous language in § 1113 regarding benefits paid under collective bargaining agreements. 110 B.R. at 587. This difference, the Chief Judge maintained, demonstrated that Congress did not intend for § 1113 to alter the priority scheme § 507 establishes. *Id.* Judge Paskay concluded that he could reconcile §§ 507 and 1113 by holding that "§ 1113 governs only the conditions under which a Debtor-in-Possession may modify or reject a collective bargaining agreement, but that payment of employment-related prepetition obligations is governed exclusively by § 507." *Id.* at 588.

Like Chief Judge Paskay, Judge Ginsberg of the Bankruptcy Court for the Northern District of Illinois held that "there is no indication that Congress intended § 1113(f) to be a superpriority provision for claims arising both prepetition and postpetition under a collective bargaining agreement." *In re Moline Corp.*, 144 B.R. 75 (Bankr.N.D.Ill.1992). In the *Moline* case, collective bargaining agreements obligated the debtor to pay medical expenses and vacation benefits to laid-off workers. *Id.* at 75. The debtor, after filing bankruptcy, failed to make the payments required under the collective bargaining agreements. 144 B.R. at 76. The unions that had negotiated the agreements moved the bankruptcy court to order Moline Corporation, the debtor, to pay both the prepetition and postpetition obligations arising under the agreements. *Id.* at 75. The unions argued, just as the Union in this case does, that "under § 1113(f) a debtor may not unilaterally modify any provision of a collective bargaining agreement ... [and that] ... by failing to pay the prepetition and postpetition ... obligations [under the collective bargaining agreement] the debtor has impermissibly modified the collective bargaining agreement." *Id.* at 76.

Judge Ginsberg found the reasoning of *In re Murray Industries*, 110 B.R. 585 (Bankr.M.D.Fla.1990), to be persuasive. He emphasized that the debtor, by failing to make the payments required by the collective bargaining agreement, did not alter or terminate the collective bargaining agreement though in so failing, it might have breached the agreement. *Id.* at 79. Judge Ginsberg also noted that if Congress had wanted to grant superpriority status to claims for benefits arising under collective bargaining agreements it "could have amended §§ 507(a)(3) and (4) to give superpriority status [to such claims] ... [or] ... provided specifically in § 1113 for superpriority status for collective bargaining agreement wage and benefit claims." *Id.*

 This Court, too, is persuaded by the reasoning of *In re Murray Industries*, 110 B.R. 585 (Bankr.M.D.Fla.1990). If Congress had intended for § 1113 to disrupt the priority scheme established in § 507, it should have either included language in § 1113 similar to that it included in § 1114 or amended § 507 to reflect the change it intended. Since Congress failed to either include specific language in § 1113 overriding § 507 or amend § 507 to give superpriority status to benefits arising under collective bargaining agreements, this Court can only find that § 507, as the Code's exclusive section establishing priorities, prohibits the Court from granting the relief the Union seeks. Central does not unilaterally modify or alter the Agreement if it does not pay Ms. Dailey the back-pay and other lost benefits the arbitrator awarded to her though in failing to immediately pay the arbitrator's award, Central may breach the terms of the Agreement.[2] The Court will order the parties to meet and determine the exact amount Central owes Ms. Dailey pursuant to the arbitrator's award. Because Ms. Dailey's claim against Central arose prepetition and fails to qualify for priority status under § 507 of the Bankruptcy Code, the Court will treat her claim (in the amount to which the parties agree) as a general unsecured claim.

---

2. The Court does not decide today whether such a failure constitutes a breach of the Agreement.

An Order consistent with this Memorandum Opinion will be entered this date.

### ORDER

For the reasons set forth in the Memorandum Opinion filed this date, IT IS

ORDERED that Motion 228 IS DENIED.

IT IS FURTHER ORDERED that the parties shall meet and determine the exact amount Central owes Ms. Dailey pursuant to the arbitrator's award.