**In re SPIRIT HOLDING COMPANY, INC., et al., Debtor.**

**Spirit Holding Company, Inc., et al., Movant.**

**Bankruptcy No. 93 42135-293. Motion No. 125.**

United States Bankruptcy Court, E.D. Missouri, E.D.

June 23, 1993.

John Collen, Sonnenschein Nath & Rosenthal, Chicago, IL, David A. Sosne, St. Louis, MO, for debtors.

I. William Cohen, Pepper, Hamilton & Scheetz, Detroit, MI, Milton P. Goldfarb, Newman, Goldfarb, Freyman & Stevens, P.C., Clayton, MO, for Unsecured Creditors' Committee.

Jan Bond, Diekemper, Hammon, Shinners, Trucotte and Larrew, P.C., St. Louis, MO, for Local 655, United Food and Commercial Workers Union.

Jairus M. Gilden, Karmel & Gilden, Chicago, IL, for Local 881, United Food and Commercial Workers Union.

Michael Richman, Mayer, Brown & Platt, New York City, David A. Warfield, Husch & Eppenberger, St. Louis, MO, for Bank Group.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of

Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine.

## PROCEDURAL BACKGROUND

(1) On May 6, 1993, Central Hardware Company (Central) and Witte Hardware Corporation (Witte), as debtors and debtors in possession (collectively, Debtors), moved the Court to invoke its equitable powers and issue an order authorizing them to pay certain prepetition sales commissions to their salespeople.

(2) The Bank Group[1] initially filed an objection to the payment of any of the commissions contemplated by Debtors' motion. However, at a hearing held on May 21, 1993, the Bank Group orally consented to the payment of those commissions which would qualify for priority status under section 507(a)(3) of the Bankruptcy Code (i.e. those earned within ninety days of the Debtors' filing for bankruptcy protection in an amount not to exceed $2,000.00 per salesperson). The Bank Group conditioned its consent upon the Debtors' proving, one, that any commissions paid were actually earned within the ninety-day period and, two, that no salesperson received more than $2,000.00. The Bank Group expressed concern that some of the salespeople might have previously received payments pursuant to an order of the United States Bankruptcy Court for the District of Delaware[2] under the theory that the sums previously-paid qualified for priority under section 507(a)(3), 507(a)(4) or 507(a)(7) of the Bankruptcy Code and the amount of these payments would necessarily reduce the amount

the Court could now approve because section 507(a)(3) limits each individual's priority to a total of $2,000.00.

(3) Local 655 of the United Food and Commercial Workers Union (Union) filed a Supplemental Statement in Support of Supplemental Motion of Debtor Central Hardware Company for Authorization to Pay Certain Pre–Petition Sales Commissions to Employees. The Union took the position that under section 1113 of the Bankruptcy Code and the collective bargaining agreement between it and the Debtors, its members were entitled to full payment of all commissions owed to them without regard to the priority criteria set forth by section 507(a)(3) of the Bankruptcy Code.

(4) Local 881 of the United Food and Commercial Workers Union also filed a Statement in Support of Debtor's Motion for Authorization to Pay Certain Pre-petition Sales Commissions to Employees.

## FACTUAL BACKGROUND

(1) Before they filed their petition in bankruptcy, the Debtors entered into a collective bargaining agreement with the Union (the Agreement).[3]

(2) The Debtors have not proceeded under section 1113 of the Bankruptcy Code to reject the Agreement.

(3) Article 26.00 of the Agreement provides for the monthly payment of sales commissions/bonuses to members of the Union based upon the type and amount of sales they make over a given period. Article 26 also allows Union salespeople employed by the Debtors to draw $170.00 per

---

**1.** The Bank Group is comprised of Generale Bank, New York Branch, as agent, Allied Irish Bank, ABN–AMRO Bank, Banque Nationale de Paris, Banque Paribas, Eaton Vance Prime Rate Reserves, Banque Worms, Societe Generale, Commercial Bank of Kuwait and Banque Internationale a Luxembourg. The Bank Group holds claims against the Debtors in an amount approximating $150 million in senior secured indebtedness.

**2.** The Debtors filed their bankruptcy petition in the United States Bankruptcy Court for the District of Delaware. The case was moved to the Eastern District of Missouri following the granting of the Bank Group's Motion to Transfer Venue on April 16, 1993.

**3.** The Debtors also have similar agreements with members of Local 881 of the United Food and Commercial Workers Union. To simplify the discussion, the Court will discuss the Debtors' obligations under their agreement with Local 655. The agreements the Debtors have with Local 881 present the same legal questions as the agreement with Local 655 does to the extent that all the agreements provide for the payment of commissions/bonuses and the unions argue that § 1113(f) of the Bankruptcy Code requires the Debtors to pay the commissions without regard to the limits established in § 507(a)(3) of the Code.

week (paid bi-weekly) against the commissions they earn.

(4) Pursuant to corporate policy, the Debtors also paid non-union salespeople commissions/bonuses.

(5) Debtors employ approximately 70 salespeople (Union members and non-Union members) and owe commissions to many of these people.

(6) On March 30, 1993, Judge Helen S. Balick of the Bankruptcy Court for the District of Delaware, entered an order approving the payment of pre-petition wages and related expenses to the Debtors' employees so long as the claims paid qualified for priority under §§ 507(a)(3), 507(a)(4) or 507(a)(7) of the Bankruptcy Code.

## DISCUSSION

After considering the parties' briefs and the authorities cited therein, the Court has concluded that it can only authorize the payment of those commissions to the Debtors' salespeople earned within ninety days of the Debtors' filing their bankruptcy petition in an amount not to exceed $2,000.00 per salesperson when totalled with those payments previously made to each salesperson under the March 30, 1993 order of the United States Bankruptcy Court for the District of Delaware.

The Union argued before this Court that section 1113(f) of the Bankruptcy Code which provides that a trustee cannot "unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with" the other subsections of section 1113 (which prescribe the methodology by which a debtor may reject its collective bargaining agreements) required the Debtors to pay the Union's members their commissions in full, without regard to the limits set forth in section 507(a)(3) of the Code. The Court, however is persuaded by the logic of those courts that have rejected the argument the Union has made.

Chief Judge Paskay, writing for the Bankruptcy Court for the Middle District of Florida held that "[s]ection 1113 in no way eliminated or modified the provisions of § 507 requiring the prioritization of wages and other employment benefits earned prior to the filing of the bankruptcy petition." *Shipwrights, Joiners and Caulkers Local 2071 of the United Brotherhood of Carpenters, AFL–CIO v. Uniflite, Inc. (In re Murray Industries)*, 110 B.R. 585, 588 (Bankr.M.D.Fla.1990). In *Murray Industries* the union claimed that its members were entitled to receive payment of all their vacation benefits under a collective bargaining agreement following the post-petition lay-off of virtually all of the debtor's employees. *Id.* at 586. Local 2071 argued that the debtor's refusal to pay its laid-off employees the amounts due them under their collective bargaining agreement constituted a unilateral modification of that agreement which section 1113(f) of the Code prohibits. *Id.*

In rejecting Local 2071's argument, Chief Judge Paskay noted that if section 1113(f) required the debtor to immediately pay the union members their vacation benefits, then it directly conflicted with sections 507 and 1129 of the Code which proscribe how claims will be treated in bankruptcy. *Id.* at 587. Because the union's interpretation of section 1113 would create a direct conflict, Chief Judge Paskay examined the history of section 1113 and compared it to section 1114 which exempts the payment of retirement benefits from the other provisions of the Bankruptcy Code that might prohibit their payment. *Id.* The Chief Judge noted that both section 1113 and 1114 established procedures by which a debtor can alter certain types of contractual obligations. Judge Paskay also recognized that Congress used explicit language in section 1114 to exempt the payment of retirement benefits from the other provisions of the Bankruptcy Code which might prohibit their payment but that Congress did not use analogous language in section 1113 regarding benefits paid under collective bargaining agreements. 110 B.R. at 587. This difference, the Chief Judge maintained, demonstrated that Congress did not intend for § 1113 to alter the priority scheme § 507 establishes. *Id.* Judge Paskay concluded that he could reconcile sections 507 and 1113 by holding that "§ 1113 governs only the conditions under which a Debtor-in-Pos-

session may modify or reject a collective bargaining agreement, but that payment of employment-related prepetition obligations is governed exclusively by § 507." *Id.* at 588.

Like Chief Judge Paskay, Judge Ginsberg of the Bankruptcy Court for the Northern District of Illinois held that "there is no indication that Congress intended § 1113(f) to be a superpriority provision for claims arising both prepetition and postpetition under a collective bargaining agreement." *In re Moline Corp.,* 144 B.R. 75 (Bankr.N.D.Ill.1992). In the *Moline* case, collective bargaining agreements obligated the debtor to pay medical expenses and vacation benefits to laid-off workers. *Id.* at 75. The debtor, after filing bankruptcy, failed to make the payments required under the collective bargaining agreements. 144 B.R. at 76. The unions that had negotiated the agreements moved the bankruptcy court to order Moline Corporation, the debtor, to pay both the prepetition and postpetition obligations arising under the agreements. *Id.* at 75. The unions argued, just as the Union in this case does, that "under § 1113(f) a debtor may not unilaterally modify any provision of a collective bargaining agreement ... [and that] ... by failing to pay the prepetition and postpetition ... obligations [under the collective bargaining agreement] the debtor has impermissibly modified the collective bargaining agreement." *Id.* at 76.

Judge Ginsberg found the reasoning of *In re Murray Industries,* 110 B.R. 585 (Bankr.M.D.Fla.1990), to be persuasive. He emphasized that the debtor, by failing to make the payments required by the collective bargaining agreement, did not alter or terminate the collective bargaining agreement though in so failing, it might have breached the agreement. *Id.* at 79. Judge Ginsberg also noted that if Congress had wanted to grant superpriority status to claims for benefits arising under collective bargaining agreements it "could have amended §§ 507(a)(3) and (4) to give superpriority status [to such claims] ... [or] ... provided specifically in § 1113 for superpriority status for collective bargaining agreement wage and benefit claims." *Id.*

This Court, too, is persuaded by the reasoning of *In re Murray Industries,* 110 B.R. 585 (Bankr.M.D.Fla.1990). If Congress had intended for § 1113 to disrupt the priority scheme established in § 507, it should have either included language in § 1113 similar to that it included in § 1114 or amended § 507 to reflect the change it intended. Since Congress failed to either include specific language in § 1113 overriding § 507 or amend § 507 to give superpriority status to benefits arising under collective bargaining agreements, this Court can only find that § 507, as the Code's exclusive section establishing priorities, prohibits the Court from granting the relief the Union seeks. The Bank Group has consented to the payment of those commissions which would qualify for priority status under section 507(a)(3) of the Bankruptcy Code (i.e. those earned within ninety days of the Debtors' filing for bankruptcy protection in an amount not to exceed $2,000.00 per salesperson when added to those sums paid under the Delaware court's order) and the Court will invoke its equitable powers to allow the payment of those commissions upon the Debtors making the requisite proof of both the timing and amount of payments to which they claim to be entitled.

### ORDER

For the reasons set forth in the Memorandum Opinion entered this date IT IS

ORDERED that the Debtors, upon determining that the commissions sought to be paid qualify for priority status under § 507(a)(3), shall pay those commissions to their salespeople. The payment of commissions is to be allowed only to the extent that those commissions were earned within ninety days of the debtors' filing their petitions in bankruptcy and that any commission paid to a salesperson, when summed with any payment made to that person pursuant to the March 31, 1993 order of the Bankruptcy Court for the District of Delaware, does not exceed $2,000.00.

IT IS FURTHER ORDERED that the Debtors shall file with the Court an affidavit from an accountant, payroll officer or other person with the necessary knowledge, stating:

(1) the name of each salesperson to whom a commission is owed;

(2) the amount of the commission owed to each salesperson within the 90-day period proscribed by § 507(a)(3);

(3) the time period when each salesperson earned said commission owed to her or him;

(4) the amount of any payment made to each sales person under Judge Balick's March 30, 1993 Order; and

(5) the balance due each salesperson after deducting the amounts previously awarded under Judge Balick's Order.

The Debtors shall also send a copy of said affidavit to the Bank Group, the Official Unsecured Creditors' Committee, Local 655, United Food and Commercial Workers Union, Local 881, United Food and Commercial Workers Union and the United States Trustee.