**In re MOLINE CORPORATION, Debtor.**

**Bankruptcy No. 91 B 8873.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 8, 1992.

◎∾3113

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court on the Union's motion for an order requiring the Chapter 11 debtor, Moline Corporation, to immediately pay both its prepetition and postpetition obligations arising under collective bargaining agreements.

Moline Corporation entered collective bargaining agreements with a variety of labor unions, including two local unions, GMP Local 369B and GMP Local 410, both of which are affiliated with the Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL–CIO, CLC ("GMP International"). The agreement with Local 369B covered the terms and conditions of employment for certain employees at the debtor's facilities in St. Charles, Illinois. The agreement with Local 410 governed the employment terms and conditions for certain employees at the debtor's Belvidere, Illinois facility. Under the terms of both collective bargaining agreements Moline was financially responsible for the employees' medical expenses, and under the agreement with Local 410, Moline was required to pay accrued vacation pay to the union members laid off before May 1991. Moline does not dispute

---

the fact that it has not paid either the medical benefits or the vacation pay.

During 1990–1991 the debtor experienced financial difficulties, and on April 25, 1991 Moline filed a Chapter 11 petition. During the Chapter 11 case, the debtor has operated as a debtor in possession and has complied with the employment terms and conditions as set forth in the collective bargaining agreements. However, the debtor has not paid the obligations incurred prepetition under the collective bargaining agreements. The debtor has not moved to either accept or reject any of its collective bargaining agreements.

The Union wants the debtor to pay its employees, or the Union on their behalf, the money owed under the terms of the collective bargaining agreements. Accordingly, the Union brought the instant motion seeking a court order compelling the debtor to not only recognize all of its prepetition and postpetition obligations under the collective bargaining agreement, but to also immediately pay all of its prepetition and postpetition collective bargaining agreement obligations immediately. The debtor concedes that it has unpaid obligations under the terms of the collective bargaining agreements, but argues it is not required to pay either the prepetition or postpetition obligations immediately. The court agrees with the debtor, and denies the Union's motion seeking an order requiring immediate payment of the collective bargaining obligations.

## JURISDICTION AND PROCEDURE

The court has jurisdiction over this proceeding under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O) as a matter involving the administration of the estate, the allowability and priority of claims and the adjustment of the debtor-creditor relationship. The matter is before the court under Local Rule 2.33 of the United States District Court for the Northern District of Illinois, which automatically refers bankruptcy cases and proceedings to this court for hearing and determination.

## DISCUSSION

■ The issue before the court is the priority accorded claims arising out of unrejected collective bargaining agreements. Determination of this issue implicates § 1113(f) of the Bankruptcy Code which provides:

Rejection of collective bargaining agreements—

(f) No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

The Union contends that § 1113(f) establishes "superpriority" status for claims arising out of collective bargaining agreements. The Union says that § 1113(f) gives the employees a superpriority claim over all other prepetition and postpetition unsecured claims. The Union does not contend that the employees' prepetition collective bargaining agreement claims prime secured claims. *Compare*, 11 U.S.C. § 506(c). It argues that under § 1113(f), a debtor may not unilaterally modify any provision of a collective bargaining agreement. It is the Union's position that Moline, by failing to pay the prepetition and postpetition medical and vacation obligations, the debtor has impermissibly unilaterally modified the collective bargaining agreement. In order to purge itself of illegal alteration of the collective bargaining agreement, the debtor must, as a matter of law, immediately pay all prepetition and postpetition obligations under the collective bargaining agreement. In other words, the Unions' position is that as a result of § 1113(f), the membership's claims for wages and benefits, including both prepetition and postpetition claims are entitled to priority and payments ahead of all other unsecured claims, including the other Chapter 11 administration claims. The Union, to a large extent, relies on *In re Unimet*, 842 F.2d 879 (6th Cir.1988) and on cases following *Unimet*.

In *Unimet*, the debtor originally sought permission to pay the insurance premiums for retiree benefits pursuant to the collec-

tive bargaining agreement as an administrative expense, but then did a 180 degree turn and argued against its own motion. After extensive analysis of the history of 11 U.S.C. § 1113, the Sixth Circuit concluded that the protections offered by § 1113 extended to not only current employees, but to retirees as well. The court assumed, but did not decide, that these retiree benefits were not properly characterized as administration expenses under § 503(b). However, the court held that the debtor was not free to ignore its obligation to pay both prepetition and postpetition retiree benefits because § 1113 requires compliance with all provisions of a collective bargaining agreement, including the requirements of payment.

*Unimet* was viewed as controlling by a lower court in the Sixth Circuit in *Ohio Corrugating*, 1991 WL 213850 (N.D.Ohio). *Ohio Corrugating* was a Chapter 11 case. The Union filed a class proof of claim asserting claims for unpaid wages, severance pay, vacation pay, and medical/dental benefits, all of which Ohio Corrugating owed its employees under a collective bargaining agreement. The debtor had not sought to reject the collective bargaining agreement. In response to the debtor's objection to these claims, the Union argued that § 1113(f) removed claims arising from unrejected collective bargaining agreements from other Code sections. The court held that the Union's claims were "... entitled to full payment of the bargained for benefits under 11 U.S.C. § 507. ... by reason of binding Sixth Circuit authority, *In re Unimet Corp.* ..." Thus, the court concluded that § 1113(f) protected all benefits flowing from an unrejected collective bargaining agreement, and that *Unimet* effectively gave these benefits superpriority over § 507 of the Code by requiring a debtor to honor all provisions of a collective bargaining agreement unless and until the debtor was allowed to reject the collective bargaining agreement of § 1113. *Ohio Corrugating*, 1991 WL 213850 at 2. The *Ohio Corrugating* court concluded that since any failure to pay either prepetition or postpetition collective bargaining agreement obligations would result in an impermissible

unilateral alteration of the collective bargaining agreement, the logic follows that the debtor must pay all prepetition and postpetition obligations under the collective bargaining agreement without regard to the priority provisions of § 507, to avoid impermissible unilateral alteration under § 1113(f). *See, In re Arlene's Sportswear, Inc.*, 140 B.R. 25 (Bkrtcy.D.Mass.1992).

The Unions in the instant dispute argue that under *Unimet* and its progeny, their claims for vacation pay and medical benefits must be paid immediately, because § 1113(f) removes the payment of these claims from the operation of other Code sections, including § 507, and establishes that these claims are entitled to be paid before all others. As might be anticipated, the Official Creditors' Committee and the debtor completely disagree with the Unions analysis. They argue that § 1113 governs only the procedure for the assumption or rejection of a collective bargaining agreement, not the timing of the actual payment of labor related obligations. They contend that § 1113(f) provides only that obligations under the collective bargaining agreement continue to accrue unless and until the debtor or trustee is allowed to reject the collective bargaining agreement under § 1113(f). *Compare,* § 365(d)(3). Nothing the debtor or trustee does unilaterally can alter this obligation. However, unless the debtor assumes the collective bargaining agreement, there is no provision for the actual payment of the obligations as a superpriority. *Compare* § 365(b)(1). If the debtor or trustee assumes the collective bargaining agreement, do the payments due under that contract, like any other contract assumed by the debtor or trustee, enjoy superpriority status? *See,* 11 U.S.C. § 1113(b)–(c). *But see,* 11 U.S.C. § 1113(e). Thus, they conclude that payment of the Unions' claims for prepetition medical benefits and vacation pay is governed by §§ 503 and 507 of the Bankruptcy Code. *See, e.g., In re Murray Industries,* 110 B.R. 585 (Bankr.M.D.Fla.1990); *Armstrong Store Fixtures,* 135 B.R. 18 (Bankr. W.D.Pa.1992); and *In re Roth American, Inc.,* 120 B.R. 356 (Bankr.M.D.Pa.1990).

In *In re Murray Industries*, 110 B.R. 585 (Bankr.M.D.Fla.1990), the Union alleged that the debtor violated the collective bargaining agreement and § 1113(f) of the Bankruptcy Code by not paying the vacation claims of the laid-off employees, as provided by the collective bargaining agreement. The court held that immediate payment of prepetition employment related claims was not required under § 1113(f) because payment of those obligations was governed solely by § 507. The court reasoned that accepting the union's argument would create a conflict between §§ 1113(f) and 507, and thus the court looked to the legislative history for help in resolving the conflict. The court compared the legislative history of § 1113 with the history of § 1114. The court found that the language of § 1114 expressly required payment of retirement benefits, and exempted payment of the retirement benefits from the other provisions of the Code, but that § 1113 did not have similar language. Thus, the court concluded Congress intended § 1113 to be subject to other Code provisions, including § 507, and that the claim for prepetition vacation pay would be accorded third priority. *See*, 11 U.S.C. § 507(a)(3).

■ This court finds the reasoning in *In re Murray Industries*, 110 B.R. 585 (Bankr.M.D.Fla.1990) to be persuasive. Collective bargaining agreements are executory contracts, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), and the addition of § 1113 in 1984 did not change this characterization. Collective bargaining agreements are simply executory contracts with a special provision governing their assumption or rejection by the debtor or the trustee in a Chapter 11 case. *Cf.* 11 U.S.C. § 365. As with any executory contract, the Chapter 11 debtor or the trustee has the option of rejecting or assuming the collective bargaining agreement, subject to the provisions of § 1113. The debtor or trustee need not make the decision to assume or reject the contract within a time certain. *Compare*, § 365(d)(4). Unless and until the debtor rejects the collective bargaining agreement, the debtor must abide by its terms. If the debtor never rejects the collective bargaining agreement and thus assumes the agreement by inaction, the plan of reorganization must provide for the payment of the unsecured prepetition and postpetition claims according to the priority scheme set out in § 507. *See*, § 1129(a)(9). This court believes that this is what Congress intended. Indeed, the conclusion reached by this court accords with the clear Congressional intention underlying § 1113. Section 1113 was enacted to overrule *Bildisco* and to provide more rigorous standards in Chapter 11 cases for the rejection of collective bargaining agreements than for other executory contracts or leases. *See*, A. Herzog, *Collier Pamphlet Ed. Bankruptcy Code*, Comment to 1984 Amendments to § 1113.

As Congress foresaw it, because of the more rigorous standards, most collective bargaining agreements would be assumed by either inaction or denial of motions to reject. While § 1113 did not directly alter priorities, it indirectly impacted on the priority of prepetition collective bargaining agreement claims. Since most Chapter 11 debtors with union contracts would have to assume those contracts, the employees' prepetition claims under the collective bargaining agreement would automatically become Chapter 11 administration claims as part of the cure of defaults required to assume an executory contract. § 365(b)(1). After assumption all prepetition and postpetition claims arising under the collective bargaining agreement enjoy Chapter 11 administration claim status even if the contract is thereafter breached or rejected. *See*, § 365(g). While § 1113 deals extensively with the act of assuming or rejecting a collective bargaining agreement, it says nothing about the effect of assumption or rejection. Therefore, it would appear that § 365 must apply to fill in the gap left by § 1113. *See*, § 103(f). However, § 365(g) only provides for the treatment of executory contracts or leases assumed or rejected "under this section," *i.e.*, § 365. The court views the language in § 365(g) as a legislative gaffe, *i.e.*, when Congress added § 1113 in 1984, it forgot to make conforming amendments to other provisions in the

Bankruptcy Code, including § 365. Otherwise, the gaps in § 1113 would make it virtually impossible to determine the consequence of the assumption or rejection. By the same token, if a collective bargaining agreement is rejected, both the damages caused by the rejection and any prepetition collective bargaining agreement claims are treated as prepetition claims entitled to that priority such prepetition claims would otherwise be entitled to. *Cf.* § 507(a)(3)–(4).

There is simply no indication that Congress intended § 1113(f) to be a superpriority provision for claims arising both prepetition or postpetition under a collective bargaining agreement, including priority over other Chapter 11 administration claims. If that result was intended, Congress could have amended §§ 507(a)(3) and (4) to give superpriority status to collective bargaining agreement wage and benefit claims. Alternatively, Congress could have provided specifically in § 1113 for superpriority status for collective bargaining agreement wage and benefit claims. Congress certainly knows how to specify superpriority for any group of claims when it wants to. *See, e.g.,* §§ 364(b)(1), 507(b), 726(b). There is no evidence that Congress intended § 1113(f) to be a superpriority provision.

In fact, what § 1113(f) does is make clear what the rest of § 1113 implies, *i.e.,* a Chapter 11 trustee (or debtor in possession)[1] may not alter or terminate any of the terms or conditions of a collective bargaining agreement unless and until given permission to do so by the bankruptcy court after compliance with all of the provisions of § 1113. In fact, while the debtor in possession in this case, by failing to make payments when due may have breached the collective bargaining agreement, the debtor has neither altered nor terminated the collective bargaining agreement. No term of the contract has been altered. No rights under the contract have been terminated. The contract is exactly the same collective bargaining agreement the parties entered into before the Chapter 11 case. Therefore, the debtor has not violated § 1113(f).

## CONCLUSION

Thus, the prepetition claims of the Union on behalf of its members are entitled to no priority whatsoever unless the debtor or trustee assumes the contract. If the debtor or trustee assumes the collective bargaining agreement, prepetition and postpetition claims enjoy administrative priority. § 365(b)(1). If the debtor is allowed to reject the collective bargaining agreement under § 1113, the employees' prepetition claims enjoy no priority whatsoever. If the debtor elects to, or is forced to, assume the collective bargaining agreement under § 1113, the employees' claims, both prepetition and postpetition enjoy administrative priority. Of course, if the case fails and is converted to Chapter 7, § 1113 does not apply. *See,* § 103(f). *See also* § 365. In Chapter 7 cases, collective bargaining agreements are treated the same as any other executory contract. *See,* § 103(f). It is worth noting that if a collective bargaining agreement is not assumed by a Chapter 7 trustee within sixty days after the order for relief, it is automatically rejected. § 365(d)(1). Since § 1113(f) does not apply in Chapter 7, there can be no argument that the employees' prepetition claims arising from the collective bargaining agreement, enjoy a superpriority in the Chapter

---

1. This is true even though what is specifically stated in § 1113(a), *i.e.,* that either a debtor in possession or Chapter 11 trustee is bound by § 1113 in assuming or rejecting a collective bargaining agreement, is not repeated in § 1113(f) which refers only to trustees. Section 1113(f) could be read literally to only bar a Chapter 11 trustee from unilaterally altering or terminating the provisions of a collective bargaining agreement. Such a reading in theory would allow a debtor in possession to unilaterally alter or terminate a collective bargaining agreement any way it saw fit under the doctrine of expressio unius est exclusio alterius (the expression of one thing is the exclusion of another). Such a result is ridiculous, and the court believes the omission of a reference to debtors in possession in § 1113(f) to be yet another drafting error. In fact, the drafters would probably have been wise to omit the reference to a debtor in possession in § 1113(a) and simply have used the term "trustee" throughout § 1113. The term trustee would be broad enough to include a debtor in possession in any case where a Chapter 11 trustee was not appointed. *See,* §§ 1101(1), 1107(a).

7 case under the Unions' theory in this proceeding. It is doubtful that such claims would be regarded as administration claims from the failed Chapter 11 case, *see,* § 726(b), because the Unions take the view that both prepetition and postpetition § 1113(f) claims are superpriority claims, payable ahead of all other claims including the Chapter 11 administration claims. Thus, they are not administrative claims. Since the Union asserts the prepetition collective bargaining agreement claims enjoy the same superpriority status as the postpetition collective bargaining agreement claims, they cannot be administration claims by definition. *See,* §§ 503(b) and 507(a)(1). At best, such claims might enjoy the limited priority afforded wage and wage benefit claims under § 503(a)(3)–(4). Otherwise such claims would be nothing more than general unsecured claims. § 726.

It would seem anomalous that if the Union is correct about § 1113(f), claims that would be superpriority claims in a Chapter 11 case are often nothing more than general unsecured claims in a Chapter 7 case. However, it has yet to be determined whether Moline will or will not adopt its collective bargaining agreement with these unions. Therefore, the court cannot, at this time, determine the priority of the employees' wage and benefit claims under the collective bargaining agreement. Therefore, this court finds that the debtor is not required to immediately pay the Union its prepetition claims for medical benefits and vacation pay.