MASS. AIR CONDITIONING & HEAT-
ING CORP., Appellant/Debtor-in-
Possession,

v.

James L. McCOY, Administrator of the
Electrical Workers Trust Funds
Local 103, I.B.E.W., Appellee.

Civil Action No. 95–10395–DPW.

United States District Court,
D. Massachusetts.

May 31, 1996.

Joseph T. King, Boston, MA, for Mass. Air Conditioning & Heating Corp.

Lorna M. Hebert, Murphy, Hesse, Toomey & Lehane, Quincy, MA, for James L. McCoy.

*MEMORANDUM AND ORDER*

WOODLOCK, District Judge.

I.

In an effort to bring structure to a Chapter 11 reorganization proceeding, during which the beneficiary of a collective bargaining agreement asserted a purported "super-priority" under 11 U.S.C. § 1113 for its claim, the Bankruptcy Judge directed the debtor-in-possession to take a definitive position regarding whether it would assume or reject the collective bargaining agreement. The debtor thereupon filed a motion seeking to assume the agreement but also seeking to reserve the right to have pre-petition claims arising from it treated under the special—and presumptively more advantageous—limited administrative priority provisions of § 507(a)(4) of the Bankruptcy Code. The Bankruptcy Judge sidestepped the parties' respective priority gambits and instead held the debtor to the consequences of its election to assume by requiring the debtor to cure its default of the collective bargaining agreement by paying the outstanding claim under § 365. The debtor appeals. I affirm the action of the Bankruptcy Judge, who cut through a tangle of potentially conflicting legislative provisions, to secure a resolution consistent with the larger purposes of the several statutory directives arguably implicated by the circumstances of this reorganization.

## II. *Background*

On February 26, 1993, Mass. Air Conditioning & Heating Corp. ("Mass. Air" or "the Debtor") filed a Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code.[1] On June 29, 1993, James L. McCoy, the Administrator of the Electrical Workers Trust Funds, Local 103 ("the Administrator") filed a Proof of Claim for the estimated amount of $68,400.00, arguing that the claim should be accorded what is styled as super-priority status under § 1113(f).[2] (Bankruptcy Record ("BR"), Item 1.) The claim represents employee benefit contributions due under the Agreement.[3]

On February 25, 1994, Mass. Air filed its Objection to Allowance of the Claim, disputing the claim amount and the purported super-priority status. Specifically, Mass. Air argued that the claim was entitled to priority only under § 507(a)(4)[4]—applicable to unsecured claims for contributions to employee benefits plans—not any super-priority status under § 1113(f). (BR, Item 2.)[5]

In response, the Administrator filed a Reply Memorandum on April 6, 1994, again asserting that § 1113(f) trumps § 507(a), and requesting that the Bankruptcy Court order Mass. Air to release information necessary to confirm the balances due. At an April 19, 1994 hearing, the Bankruptcy Court ordered Mass. Air to provide the necessary payroll records.

The Bankruptcy Court held another hearing on August 18, 1994, during which the parties disputed whether the Agreement remained in effect. However, the parties have since agreed that the Agreement—originally executed on November 1, 1989—remains in

1. Since the Petition date, Mass. Air has maintained possession of its property, and has continued to operate its business as a debtor-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108. I note that under Chapter 11, the debtor-in-possession generally has all the rights and duties of a trustee. 11 U.S.C. § 1107; *see generally In re St. John's Nursing Home, Inc.*, 169 B.R. 795, 803 (D.Mass.1994). Thus, references to the "trustee" in the statutory directives considered in this memorandum will be understood to address the debtor-in-possession here.

 The Bankruptcy Court confirmed the July 15, 1994 Second Amended Plan of Reorganization by order dated December 20, 1994.

2. Subsection 1113(f) of the Bankruptcy Code provides:

 No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

3. The Administrator alleges that the claim represents monies owed by Mass. Air for required contributions to various multi-employer pension, deferred income, health, vacation, educational and apprenticeship training funds. (Administrator Br. at 3.) In addition, the Administrator states that the Agreement provides for interest, costs and attorney's fees if contributions are not timely paid. (BR, Item 3.) The specific claim here represents amounts owed with respect to the employment of one Local 103 union member: past-due pre-petition employee benefit contributions from the period of September 1989 to June 1990, as well as interest, statutory interest and attorney's fees both pre- and post-petition. (BR, Item 3 ¶ 2.)

4. Section 507(a), in part, provides:

(a) The following expenses and claims have priority in the following order:

 (1) First, administrative expenses allowed under section 503(b) of this title . . .

 (2) Second, unsecured claims allowed under section 502(f) of this title.

 (3) Third, allowed unsecured claims, but only to the extent of $4,000 of each individual or corporation, as the case may be, earned within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—

 (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

 (B) sales commissions . . .

 (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

 (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

 (B) for each such plan, to the extent of—

 (i) the number of employees covered by each such plan multiplied by $4,000; less

 (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

5. However, Mass. Air cautioned that § 507(a)(4) may, nevertheless, not be applicable because the provision applies only to services rendered within 180 days of the petition date. Thus, some portion or all of the claim at issue here might potentially be reduced to a general unsecured claim. (BR, Item 2.)

effect. (Mass. Air Br. at 4; Administrator Br. at 4.)

At a third hearing held on October 12, 1994,[6] Mass. Air and the Administrator entered into a stipulation in which the parties agreed on a reduced claim amount. The stipulation specified that Mass. Air owes $37,491.12, representing $27,674.78 in pre-petition contributions, interest, costs and attorney's fees, and $9,816.34 in post-petition interest, costs and attorney's fees. (BR, Item 13 ¶ 1–2; Item 5, Ex. 1 (Accounting of Damages).) The Bankruptcy Court also directed at this hearing that Mass. Air "file a motion to reject the Agreement or similar pleading by October 19, 1994." (BR, Item 14.)

Mass. Air responded by filing a "Motion for Assumption of Collective Bargaining Agreement Pursuant to Bankruptcy Code Section 1113." (BR, Item 15.) The pleading stated, in relevant part, that:

> 4. The Debtor does not presently employ any member of Local 103, and has not employed a member of Local 103 during the pendency of this Chapter 11 bankruptcy proceeding;
>
> 5. The Debtor intends to assume this Collective Bargaining Agreement in order to preserve its relationship with Local 103 in the post-petition period, which assumption, the Debtor believes, will result in a future benefit to the estate by virtue of the Debtor's ability to employ Local 103 members on an "as needed" basis and without resort to additional collective bargaining negotiation;
>
> 6. The Debtor's election to assume this Collective Bargaining Agreement *shall not constitute a waiver or limitation of any of the Debtor's rights with respect to the treatment, under 11 U.S.C. Section 507(a)(4), of existing, pre-petition claims owed to Local 103.*

(BR, Item 15) (emphasis added). Finally, the motion requested that the Bankruptcy Court approve Mass. Air's assumption *"on condition* that the Debtor be allowed to reserve its rights with respect to the treatment of Local 103's pre-petition claim, *pursuant to the priority of payment methodology prescribed under 11 U.S.C. Section 507(a)(4)." Id.* (emphasis added).

At a final January 24, 1995 hearing, the Bankruptcy Court issued an order, dispute over which is the basis of this appeal, disposing of Mass. Air's Objection to the Claim and Mass. Air's Motion for Assumption. The Bankruptcy Court 1) granted Mass. Air's motion to assume the collective bargaining agreement ("the Agreement") but under § 365,[7] not § 1113; 2) denied Mass. Air's request that the assumption be made without prejudice to its right to dispute the *priority* of the claim under § 507(a); and 3) in turn, required Mass. Air to pay the claim of $37,-491.12, in full, to the Administrator under § 365(b)(1)(A).

## III. *Discussion*

■ Federal Bankruptcy Rule 8013 authorizes a district court sitting on appeal to "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." While "[f]indings of fact shall not be set aside unless clearly erroneous," Fed.Bankr.R. 8013, issues of law are reviewed *de novo. In re Rayman, Martin & Fader, Inc.,* 170 B.R. 286, 288 n. 4 (D.Md.1994) (citation omitted) (interpreting 11 U.S.C. § 1113).

---

**6.** I note that the Bankruptcy Court's order inadvertently lists the date of the stipulation as October 24, 1994.

**7.** Section 365 provides, in part:
(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
(A) cures, or provides adequate assurance that the trustee will promptly cure such default;
(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
(C) provides adequate assurance of future performance under such contract or lease.

The parties approached the dispute in this case by attempting to navigate the shoals of § 1113 like ships passing in the night. The problem is understandable given the breathless history and problematic drafting of § 1113. As will appear below, I find, as did the Bankruptcy Court, that § 1113 is not operative in this setting.

Congress enacted § 1113 in response to the storm of protest that resulted from the Supreme Court's decision in *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).[8] Lobbying efforts by labor interests led to enactment of this legislation restricting *Bildisco* just five months after *Bildisco* was handed down. *See generally In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir.1990), *cert. denied sub nom. Air Line Pilots Ass'n v. Shugrue*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991) ("Ionosphere I"). In *Bildisco*, the Court held, in part, that a collective bargaining agreement was an executory contract under § 365(a), *id.* at 521–22, 104 S.Ct. at 1193–94; that the filing of a bankruptcy petition ren-

dered collective bargaining agreements unenforceable, *id.* at 532, 104 S.Ct. at 1199; and that, as a result, a debtor could unilaterally terminate an unexpired collective bargaining agreement or modify its provisions prior to seeking bankruptcy court approval for rejection of an executory contract under § 365(a). *Id.* at 533–34, 104 S.Ct. at 1199–1201.

In response, subsection 1113(a) provides:

The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter [11 U.S.C. §§ 1101 et seq.] . . . *may assume or reject* a collective bargaining agreement *only in accordance with the provisions of this section.*

(11 U.S.C. § 1113(a)) (emphasis added). However, despite § 1113(a)'s purported applicability to both assumption and rejection, the remaining and operative subsections deal exclusively with rejection and modification. Subsection 1113(b) directs that the debtor attempt to negotiate with the union before seeking rejection of the agreement.[9] Subsec-

---

**8.** Section 1113 was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98 Stat. 333, 390–91 (1984).

I note that the scholarly literature has concluded the legislative history consists, with the exception of an intent to repudiate *Bildisco*, of "little more than self-serving statements by opposing partisans" and consequently is "singularly unhelpful," especially with respect to interpreting the ambiguous phrases in § 1113(b)–(e), such as "good cause." Marc S. Kirschner, et al., *Tossing the Coin Under Section 1113: Heads or Tails, The Union Wins*, 23 Seton Hall L.Rev. 1516 (1993) (concluding that "section 1113 is a flawed statute. It has proved to be unworkable in practice and is the cause of much needless and expensive litigation. A pervasive congressional overhaul is sorely needed") (citing Judith D. Nichols, *Rejection of Collective Bargaining Agreements by Chapter 11 Debtors: The Necessity Requirement Under Section 1113*, 21 Ga.L.Rev. 967, 1005 (1987)) (noting wide range of comments by individual members precludes an assessment of congressional intent). *See also* Anne J. McClain, *Bankruptcy Code Section 1113 and the Simple Rejection of Collective Bargaining Agreements: Labor Loses Again*, 80 Geo.L.J. 191, 195–96 (1991) (noting debate between Senators Robert Packwood and Strom Thurmond, and the resulting decision to reject *Bildisco* ). No official report accompanies § 1113 because no agreement could be reached; thus the legislative history consists only of statements read into the Congressional Record. *In re Century Brass Products, Inc.*, 795 F.2d

265, 273 (2d Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 433, 93 L.Ed.2d 383 (1986).

**9.** Subsection 1113(b) provides:

(b)(1) Subsequent to filing a petition and prior to filing an application seeking rejection of a collective bargaining agreement, the debtor in possession or trustee . . . shall—

(A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and

(B) provide, subject to subsection (d)(3), the representative of the employees with such relevant information as is necessary to evaluate the proposal.

(2) During the period beginning on the date of the making of a proposal provided for in paragraph (1) and ending on the date of the hearing provided for in subsection (d)(1), the trustee shall meet, at reasonable times, with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such agreement.

*See also In re The Lady H Coal Company, Inc.*, 193 B.R. 233, 241 (Bankr.S.D.W.Va.1996) (reviewing cases which have interpreted § 1113(b),

tion 1113(c) provides the requirements by which a court shall approve an application for rejection,[10] and § 1113(d) establishes a detailed time frame in which this determination is to be made. Subsections 1113(e) and (f) [11] refer only to acts of termination or alteration with § 1113(f) trumping the procedures for *rejection* of collective bargaining agreements as executory contracts under § 365(a). The title of § 1113 itself reads: "§ 1113. *Rejection* of collective bargaining agreements." (Emphasis supplied).

Thus, given the plain language of § 1113(b)–(f) (directed in operation solely to termination or alteration of collective bargaining agreements), and the remedial purpose behind its enactment (directed to securing special procedures before a collective bargaining agreement may be rejected or modified), I find that the use of the term *assumption* in § 1113(a) was at most sloppy legislative drafting. The reference to assumption appears simply to call out the character of *rejection* by identifying it with its opposite. Otherwise, assumption plays no part in the purpose or operation of § 1113. Section 1113 is designed to provide additional procedural requirements· for rejection or modification of collective bargaining agreements, and only to that degree supersedes and supplements the provisions in § 365. *See Norfolk and Western Railway Co. v. American Train Dispatchers Association,* 499 U.S. 117, 136 n. 2, 111 S.Ct. 1156, 1167 n.

2, 113 L.Ed.2d 95 (1991) (Stevens, J., dissenting); *see also Wien Air Alaska, Inc. v. Bachner,* 865 F.2d 1106, 1111 n. 5, 1112 (9th Cir.1989).

By contrast, assumption of collective bargaining agreements continues to be governed by the provisions for executory contracts under § 365. Nothing in § 1113's plain language or legislative history indicates that Congress intended to alter *Bildisco*'s holding that collective bargaining agreements are executory contracts. Because § 1113 speaks only to rejection, *assumption* of a collective bargaining agreement—like any other executory contract—remains within the province of § 365. *See In re Moline Corp.,* 144 B.R. 75, 78 (Bankr.N.D.Ill.1992).

■ Having chosen to assume—to "preserve its relationship with Local 103" and to create "a future benefit to the estate" (BR, Item 15)—the claim is now properly elevated to "administrative" priority, (*see* BR, Item 7 (Second Amended Plan of Reorganization)), and becomes due immediately and in full. *Id.* at 79; *Texaco, Inc. v. Louisiana Land and Exploration Co.,* 136 B.R. 658, 663 (M.D.La.1992). Mass. Air cannot now avoid this consequence by relying on its requested "conditional" assumption. In short, Mass. Air cannot have it both ways. The Bankruptcy Court, in its efforts to direct reorganization, ordered Mass. Air to reject or assume. Mass. Air chose to assume.[12]

---

utilizing a nine-part test to determine if § 1113(b)'s requirements have been satisfied).

**10.** Subsection 1113(c) provides:
(c) The court shall approve an application for rejection of a collective bargaining agreement only if the court finds that—
(1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (b)(1);
(2) the authorized representative of the employees has refused to accept such proposal without good cause; and
(3) the balance of the equities clearly favors rejection of such agreement.

**11.** Subsection 1113(e) and (f) provide:
(e) If during a period when the collective bargaining agreement continues in effect, and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions,

wages, benefits, or work rules provided by the collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot.
(f) No provision of this title [11 U.S.C. §§ 1101 et seq.] shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

**12.** Mass. Air now alternatively argues that its conditional motion was an implied request to *modify* the Agreement, and thus § 1113 applies. It further argues that it did not have proper time to satisfy the requirements of § 1113(b)–(e). (Mass.Air.Br. at 8–9.) In response, the Administrator argues that Mass. Air has waived its right to raise this argument for the first time on appeal, failing to raise the issue at any time below, *Boston Beer Co. v. Slesar Bros. Brewing Co.,* 9

Thus, I find that the Bankruptcy Court's decision was proper, as well as efficient, judicial administration that sought to cut through an unsettled area of law. *See also* Daniel Keating, *Collective Bargaining Agreements in Bankruptcy in Bankruptcy and Employment Law* 72–96 (1995).[13]

## IV. *Conclusion*

For the reasons set forth more fully above, the Bankruptcy Court's order is AFFIRMED.

F.3d 175, 180 (1st Cir.1993), and, in the alternative, that Mass. Air had substantial opportunity to achieve compliance with the procedural requirements. (Administrator Br. at 12–14.) While finding the Administrator's contentions compelling, I nevertheless conclude that both parties bypass the critical issue. Mass. Air's motion was in no way an *implied request for modification.* Modification refers to alteration of the terms of a collective bargaining agreement, not the opportunity to secure ratification of a failure to make payments when due. *See In re Moline Corp.*, 144 B.R. 75, 79 (Bankr.N.D.Ill.1992).

**13.** Although I need not reach the issue in this case, I note that a great deal of controversy currently surrounds whether unrejected, unassumed claims under collective bargaining agreements are governed by the general priority methodology in § 507, or whether § 1113 grants a super-priority—elevating a claim to administrative expense status. This dispute was avoided here by the Bankruptcy Judge's sensible decision to force the debtor to elect explicitly whether to reject or assume.

The case of *In re Unimet Corp.*, 842 F.2d 879, 882–83 (6th Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988), and its progeny (*see In re Acorn Building Components, Inc.* 170 B.R. 317, 320–21 (E.D.Mich.1994); *In re Arlene's Sportswear, Inc.*, 140 B.R. 25, 27–28 (Bankr. D.Mass.1992); *United Steelworkers of America v. The Ohio Corrugating Company*, No. 4:90CV0810, 1991 WL 213850 at *3–4 (N.D.Ohio Jan. 3, 1991); *In the Matter of Canton Castings, Inc.*, 103 B.R. 874, 875–76 (Bankr.N.D.Ohio 1989)), have advanced the proposition that § 1113(f) impliedly creates a super-priority. *See also Eagle, Inc. v. Local No. 537 of the United Ass'n of Journeymen and Apprentices*, CA No. 95–CV–10693–RGS (D.Mass. Feb. 15, 1996) (order granting super-priority status under § 1113).

The argument—in varying forms—is that § 1113 was enacted to prevent unilateral rejections and modifications of collective bargaining agreements, including failure to pay; that failure to pay a claim without following the procedures for rejection is a constructive assumption; and that § 1113(f) ensures that § 1113 shall trump all other sections of the Bankruptcy Code, including the priority provisions in § 507.

In contrast, an alternative line of cases views § 1113 as co-existing with § 507—with § 1113 establishing requirements for rejection, and § 507 establishing priorities for unrejected claims. This argument reasons that 1) § 1113's plain language is silent with respect to any priority that should be given collective bargaining claims; 2) there is nothing in the legislative history of § 1113 to support the view that Congress intended § 1113 to displace the general priority scheme of § 507, and that if Congress had desired § 1113 to create a super-priority, it could have done so as it did in § 1114(e)(2) for retiree benefits; 3) the interpretation is consistent with the principle of statutory construction cautioning that "when two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (citation omitted); and 4) utilization of the priority scheme in § 507 will in no way permit employers to rid themselves of burdensome collective bargaining agreements, the ill § 1113 was designed to cure.

The weight of opinion now follows the latter view. *See In re Ionosphere Clubs, Inc.*, 22 F.3d 403, 407–408 (2d Cir.1994) ("Ionosphere II"); *In re Roth American, Inc.*, 975 F.2d 949, 954–58 (3d Cir.1992); *Tool & Die Makers Local Lodge Number 113 v. Buhrke Industries, Inc.*, Nos. 94C5728, 94C5729, 1996 WL 131698 at *4–6 (N.D.Ill. March 20, 1996); *In re Rayman, Martin & Fader, Inc.*, 170 B.R. 286, 290–91; *In re Spirit Holding Company, Inc.*, 157 B.R. 879, 882 (Bankr.E.D.Mo.1993); *In re Moline Corp.*, 144 B.R. 75, 78–79 (Bankr.N.D.Ill.1992); *In re Armstrong Store Fixtures Corp.*, 139 B.R. 347, 348 (Bankr.W.D.Pa.1992) (recognizing the potential unfairness to non-union employees); *In re Armstrong Store Fixtures Corp.*, 135 B.R. 18, 22–23 (Bankr.W.D.Pa.1992); *In re Murray Industries*, 110 B.R. 585, 588 (Bankr.M.D.Fla.1990), *vacated as moot*, 140 B.R. 298 (M.D.Fla.1992). *See also* David A. Foster, *What's So Super About Bankruptcy Code § 1113—Harmonizing the Disbursement of Benefits Under a Chapter 11 Debtor's Collective Bargaining Agreement With 11 U.S.C. § 507*, 1994 Det.C.L.Rev. 1247, 1260.