Counsel to submit an Order within 5 days.

In re ANCHOR RESOLUTION CORP., et al.

American Flint Glass Workers Union, Appellant,

v.

Anchor Resolution Corp., et al., Appellee.

Glass, Molders, Pottery, Plastics & Allied Workers International Union, Appellant,

v.

Anchor Resolution Corp., et al., Appellee.

Bankruptcy Nos. 96–1434, 96–1516 PJW.
Civ.A. Nos. 98–167–JJF, 98–168–JJF.

United States District Court,
D. Delaware.

March 24, 1999.

---

Theodore J. Tacconelli, Esquire of Ferry & Joseph, Wilmington, Delaware, for Appellant, American Flint Glass Workers Union, Louis J. Yoppolo, Esquire of Shindler, Neff, Holmes & Schlageter, Toledo, Ohio, of counsel.

Erik C. Grandell, Esquire of Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Wilmington, Delaware, for Appellant, Glass, Molders, Pottery, Plastics & Allied Workers International Union, Douglas S. Stanger, Esquire of Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Cherry Hill, New Jersey, Carl S. Yaller, Esquire, of Glass, Molders, Pottery, Plastic & Allied Workers International Union, Media, Pennsylvania, of counsel.

Laura Davis Jones, and James L. Patton, Jr., Esquire of Young, Conaway, Stargatt & Taylor LLP, Wilmington, Delaware, for Debtor–Appellee, Anchor Resolution Corp., Robin E. Keller, Esquire, Mark Wintner, Esquire, and Kenneth Pasquale, Esquire of Stroock & Stroock & Lavan LLP, New York City, of counsel.

Patricia A. Staiano, Esquire of United States Trustee's Office, Philadelphia, Pennsylvania, United States Trustee.

## OPINION

FARNAN, Chief Judge.

Presently before the Court are appeals by American Flint Glass Workers Union ("American Flint Union") and Glass, Molders, Pottery, Plastics & Allied Workers International Union ("Glass Molders Union") (collectively "the Unions") of the Order by the United States Bankruptcy Court for the District of Delaware dated February 4, 1998. These appeals were filed separately, however, on May 5, 1998, the Court granted a Motion to consolidate the appeals. The Unions are appealing from the Bankruptcy Court's Order which granted Debtor, Anchor Resolution Corporation's Motion for Summary Judgment with respect to Debtor's objections to claims filed by the Unions. The Unions' claims arise out of certain collective bargaining agreements ("Bargaining Agreements") which Debtor assumed and assigned pursuant to an asset sale transaction. In support of their appeal, the Unions contend that the Bankruptcy Court erred in disallowing their claims because Debtor's actions represented a unilateral modification of the Bargaining Agreements in contravention of 11 U.S.C. § 1113. The Unions further contend that 11 U.S.C. § 365(k) does not control or

relieve Debtor from further responsibility under the Bargaining Agreements.

In response, Debtor maintains that the Unions received notice but failed to object to the assumption and assignment of their Bargaining Agreements and that the assumption and assignment were of the Bargaining Agreements in their entirety, without any modification of the terms of the agreements. Debtor contends that Section 1113 is inapplicable and the Bankruptcy Court applied the correct section, Section 365(k), which relieves Debtor from further responsibility under the Bargaining Agreements.

For the reasons set forth below, the Court will affirm the Bankruptcy Court's Order of February 4, 1998, and disallow the Unions' claims.

## BACKGROUND

In March 1996, Debtor and Glass Molders Union negotiated two Bargaining Agreements to cover the three year period between April 1, 1996 through March 31, 1999. Under the Bargaining Agreements, Glass Molders Union agreed to the following terms: no increase in the basic hourly wage rate for the first year of the contract; an increase in the second year of the contract that would leave Glass Molders Union members at a rate below the industry standard; and a further increase in the third year of the contract that would align the basic hourly wage rate of Debtor's Glass Molders Union workers with the rate of Glass Molders Union workers elsewhere. In consideration, Debtor agreed to make three supplemental payments during the course of the three-year term. First, employees working in plants that are sold, merged or transferred to another company shall be paid retroactively any general increases forfeited in the 1st and/or 2nd year of the contract and their rates of pay will reflect full 1st, 2nd and 3rd year general increases. Second, Debtor agreed to pay the Automatic Machine Department members, on the payroll as of April 1, 1996, a one-time payment of $700 on the earlier of April 1, 1997 or the date of retirement or termination. Third, Debtor agreed to pay Glass Molders Union employees on the payroll as of April 1, 1996, a payment of $300 in stock of Debtor's parent, Vitro, on the earlier of April 1, 1997 or the date of retirement or termination.

Effective September 1, 1996, Debtor entered into two three-year labor contracts with American Flint Union, one covering members in Zanesville, Ohio and one covering members at all other plants operated by Debtor. These Bargaining Agreements limited American Flint Union members to below-industry rates for two years of the contract. In consideration, Debtor agreed to pay a $300 sign-on bonus on September 1, 1997 to members on the payroll as of September 1, 1996, and American Flint Union members employed as of September 1, 1997, in the beginning of the second year of the contract, would be entitled to receive a single bonus of $450, $550 or $650, depending on the job category.

Thereafter, on September 13, 1996, Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code. Glass Molders Union asserted a claim in the aggregate amount of $6,284,896 arising out of the three payment obligations. American Flint Union asserted a $323,000 claim arising out of the two payment obligations.

On or about October 4, 1996, Debtor filed a motion for an order approving an asset purchase agreement, involving the sale of substantially all of Debtor's assets to Ball–Foster Glass Container, Inc., and for authority to assume and assign certain executory contracts in connection with the sale. After a hearing, by an Order dated October 15, 1996, the Bankruptcy Court denied the motion, scheduled a hearing on the sale of Debtor's assets and approved bidding procedures related to the sale.

On November 1, 1996, Debtor served a notice of assumption and assignment of certain executory contracts and unexpired leases. This notice announced the hearing date for November 22, 1996 for the purposes of approving an asset purchase agreement and granting the assumption and assignment of executory contracts, which included the Bargaining Agreements.

On December 2, 1996, Owens–Brockway Glass Container Inc. ("Owens") and Consum-

ers Packaging, Inc. ("Consumers") (collectively the "Buyers") submitted a joint bid to purchase Debtor's assets. Following a hearing, the Bankruptcy Court, by an Order dated December 20, 1996, approved the bid as documented in an Asset Purchase Agreement dated December 18, 1996. The Unions received notice of the proposed sale and did not object to the sale transaction. Prior to the closing on the transaction, Consumers assigned its rights and obligations under the Asset Purchase Agreement to Anchor Glass Acquisition Corporation, Consumers' wholly owned subsidiary that was formed for this purpose, which subsequently changed its name to Anchor Glass Container Corporation ("New Anchor").

On January 31, 1997, the Bankruptcy Court entered an Order pursuant to Section 365 approving the assumption and assignment of the executory contracts and relieving Debtor from any further liability with respect to any post-assignment breach of the subject executory contracts. On or about February 5, 1997, Debtor closed on the sale of substantially all of its assets to the Buyers pursuant to the terms of the Asset Purchase Agreement. Owens and New Anchor assumed all rights and obligations arising from and after the closing date under the Bargaining Agreements.

Prior to the closing date, Glass Molders Union, Debtor and New Anchor engaged in discussions of a possible waiver of the retroactive wage adjustment. Debtor did not reach an agreement with Glass Molders Union, however, New Anchor reached an agreement ("the New Agreement") which addressed the retroactive wage adjustment and a number of other matters covered by the Bargaining Agreements. In contemplation of the closing and the assumption of the Bargaining Agreements, the New Agreement recited that it was contingent upon New Anchor successfully completing the purchase of Debtor's assets. The New Agreement modified the Bargaining Agreements by eliminating the retroactive wage increase provision, as well as, the $300 Vitro stock bonus.

With respect to American Flint Union's Bargaining Agreements, American Flint Union agreed, between itself and New Anchor, that it would waive the American Flint Union $300 Bonus, contingent on the closing. No agreement was made between Debtor and American Flint Union.

The Unions asserted claims arising from their respective Bargaining Agreements and Debtor objected to these claims. Thereafter, Debtors filed a Motion for Summary Judgment with respect to Debtor's objections to the Unions' claims. The Unions filed a cross-motion for summary judgment. The Opinion of the Bankruptcy Court and the accompanying Order granted Debtor's Motion for Summary Judgment finding that the consummation of the sale of Debtor's assets to the Buyers, and the Consumers' assignment to New Anchor of its rights and liabilities under the Bargaining Agreements constituted an assumption and assignment, rather than a modification of the Bargaining Agreements. According to the Bankruptcy Court, there was a post-assignment breach of the Bargaining Agreements and 11 U.S.C. § 365(k) controlled, thus relieving Debtor of any liability. The Court concluded that the transaction was not governed by the provisions of 11 U.S.C. § 1113. Subsequently, Glass Molders Union and American Flint Union filed the instant appeals which were consolidated.

## STANDARD OF REVIEW

A district court has jurisdiction to hear appeals from the final orders of the Bankruptcy Court under 28 U.S.C. § 158(a). With respect to the Bankruptcy Court's findings of fact, a district court applies a clearly erroneous standard of review. Bankr.Rule 8013; *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988). The Bankruptcy Court's conclusions of law are subject to plenary review and are considered de novo by the reviewing court. *Brown*, 851 F.2d at 84. Because this appeal involves review of the Bankruptcy Court's grant of summary judgment, which is a purely legal determination, the Court will apply the de novo standard of review.

## DISCUSSION

It is the Unions' position that the Asset Purchase Agreement contemplated and ulti-

mately served to unilaterally modify the Bargaining Agreements, and therefore, the provisions of 11 U.S.C. § 1113 apply. Furthermore, there must be compliance with Section 1113 in order to assign and assume a collective bargaining agreement. Absent strict adherence to Section 1113, a Debtor remains liable. In the alternative, if Section 1113 does not apply, 11 U.S.C. § 365(k) does not relieve Debtor from its obligations to the Unions' employees which became due upon the sale of Debtor's assets.

## A. Section 365(k) of the Bankruptcy Code Bars the Unions' Claims

■ The Court is persuaded that Section 365(k) controls this proceeding, and thus, moots the issues of waiver and cure amounts. Section 365(k) of the Bankruptcy Code provides that:

[a]ssignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.

The Bankruptcy Court held and the Court agrees that the sale of Debtor's assets to the Buyers was an assumption at closing by Debtor of the Bargaining Agreements, and a simultaneous assignment of the rights and liabilities thereunder to New Anchor. Thus, applying Section 365(k) relieves Debtor of any claims whatsoever under the terms of the Bargaining Agreements, as Section 365 changes the common law rule and relieves the estate of liability, which is analogous to a novation. Although Debtor unsuccessfully attempted to obtain waivers from Glass Molders Union and American Flint Union, it did not concede that the absence of such waivers would expose it to liability. The Bankruptcy Court deemed Debtor's attempt to obtain a written waiver as a "belt and suspenders" approach to this matter.

The effect of the asset sale and the accompanying Orders of the Bankruptcy Court are binding upon the Unions. By virtue of the sale and accompanying Orders, the Bargaining Agreements were assumed and assigned to New Anchor and Owens in their entirety and pursuant to Section 365(k), the Debtor

was relieved of any obligations to the Unions under any of the agreements. Glass Molders Union and American Flint Union both argue that the amounts owed to them were due at closing and were not for post-assignment breaches precluded by Section 365(k). However, the terms of the Asset Purchase Agreement provide that the Bargaining Agreements became the responsibility of New Anchor at the time of the closing, and thus Debtor was no longer the employer of the Unions once the asset sale closed. Specifically, Section 9.05 of the Asset Purchase Agreement provides, in part, that:

[e]mployees of [Anchor] and its subsidiaries who are covered by collective bargaining agreements are referred to herein as "Business Union Employees." Effective as of the Closing, [Owens] shall and Consumers shall cause New Anchor to, subject to Section 10.01(h), (i) assume all of the currently existing collective bargaining agreements with respect to the Purchased Assets to be acquired by each such Buyer and (ii) employ all of the Business Union Employees under said collective bargaining agreements.

See D.I. 13 at 100. The Court finds that the above provision contemplates the assignment of the entire Bargaining Agreements to New Anchor. Moreover, because the Unions provided New Anchor with written waivers of their respective rights to retroactive wages and certain bonuses prior to the closing, and the cure amounts with respect to the Bargaining Agreements were zero, the Court concludes that the Unions' rights to such payments were relinquished at the time of the asset sale.

## B. Section 1113 is Inapplicable

The Court is also unpersuaded by the Unions' argument that Debtor unilaterally modified the provisions of the Bargaining Agreements in violation of Section 1113. Section 1113(a) provides that "[t]he debtor in possession … may assume or reject a collective bargaining agreement only in accordance with the provisions of this section." See 11 U.S.C. § 1113. As the Bankruptcy Court correctly held, Section 1113 of the Bankruptcy Code is inapplicable to the facts here

because that section pertains only to modifications and rejections of collective bargaining agreements, neither of which occurred here. Although, Section 1113 uses the word "assume" in the beginning of the section, the rest of the provision refers exclusively to procedures the debtor must follow to reject or modify collective bargaining agreements.[1] *See* 11 U.S.C. § 1113.

In support of its decision, the Bankruptcy Court cited *Mass. Air Conditioning & Heating Corporation v. McCoy*, 196 B.R. 659, 663 (D.Mass.1996), in which the court observed the inclusion of the word "assumption" in Section 1113(a) and concluded that it was merely congressional carelessness. In response, the Unions maintain that *Mass. Air* is inapposite to the instant case because it did not involve a sale and assignment. The Unions assert in that *Mass. Air* the debtor assumed an unexpired collective bargaining agreement with a union. Despite the different circumstances, the court in *Mass. Air* engaged in a lengthy discussion of the purpose and use of Section 1113, specifically analyzing the language of the statute. The *Mass. Air* court noted that, despite the language in Section 1113 purportedly applying the section to both assumption and rejection, the remaining and operative subsections deal exclusively with rejection and modification. *Id.* at 662. Subsection 1113(b) requires attempted negotiations between the debtor and union prior to seeking rejection of the agreement. *See* 11 U.S.C. § 1113(b). Subsection 1113(c) lists the requirements for court approval of an application for rejection, and Section 1113(d) sets a time frame for such a determination. *See* 11 U.S.C. § 1113(c) & (d). Subsections 1113(e) and (f) pertain only to termination or alteration with subsection 1113(f) trumping the procedures for rejection of collective bargaining agreements as executory contracts under Section 365(a). *See* 11 U.S.C. § 1113(e) & (f). Furthermore, even the title of Section 1113 reads: "§ 1113. Rejection of collective bargaining agreements."

■ Therefore, the court in *Mass. Air* concluded that:

> given the plain language of § 1113(b)–(f) (directed in operation solely to termination or alteration of collective bargaining agreements), and the remedial purpose behind its enactment (directed to securing special procedures before a collective bargaining agreement may be rejected or modified), [the court found] that the use of the term assumption in § 1113(a) was at most sloppy legislative drafting. The reference to assumption appears simply to call out the character of rejection by identifying it with its opposite.

196 B.R. at 663. The Court concludes that Section 1113 was designed to provide additional procedural requirements for rejection or modification of collective bargaining agreements, and the assumption of collective bargaining agreements continues to be governed by Section 365.[2]

The legislative history of Section 1113 provides further support for this interpretation.

---

1. Glass Molders Union relies on *In re Univ. Med. Ctr.*, 973 F.2d 1065 (3d Cir.1992) and *In re Leslie Fay Companies, Inc.*, 168 B.R. 294 (Bankr. S.D.N.Y.1994) in support of its assertion that Section 1113 governs assumptions of collective bargaining agreements. First, the former case involves the assumption of a Medicare health services provider agreement, and any reference to collective bargaining agreements and Section 1113 is mere dicta and not a true analysis of the application of that section. Furthermore, the *Leslie Fay* decision pertains to the issue of whether a post-petition collective bargaining agreement was governed by Section 1113. Again, that is not the issue in the instant case. Although, both cases refer to § 1113 as a special provision governing the assumption or rejection of collective bargaining agreements, neither court engaged in an analysis of the applicability of Section 1113 to the assumption of a collective bargaining agreement and a post-assignment modification.

2. American Flint Union relied upon *In re Armstrong Store Fixtures Corp.*, 135 B.R. 18 (Bankr. W.D.Pa.1992) in support of its contention that Debtor's assignment of the Bargaining Agreements represents an impermissible unilateral alteration of the agreement. The Court finds *Armstrong* to be distinguishable from the instant case in that the debtor in that case failed to pay benefits due under valid and binding collective bargaining agreements which had not been assumed and assigned by the debtor. The *Armstrong* court held that a debtor is bound by its collective bargaining agreement absent a court order to the contrary. By the assumption and assignment of the Bargaining Agreements, Debtor was relieved of all liability under those agreements.

Section 1113 was adopted in response to the United States Supreme Court's decision in *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), which held that a collective bargaining agreement is an executory contract subject to rejection by a debtor-in-possession under Section 365(a) of the Bankruptcy Code. The United States Court of Appeals for the Third Circuit explained that:

> [i]n enacting section 1113, Congress intended to preclude employers from using bankruptcy law as an offensive weapon in labor relations by going into bankruptcy and unilaterally *rejecting or modifying* the extant collective bargaining agreement (or exerting leverage at the bargaining table by threatening to do so).

*In re Roth American, Inc.,* 975 F.2d 949, 956 (3d Cir.1992) (emphasis added).[3]

■ In support of their contention that the assumption and assignment here was actually a modification, and thus, Section 365 does not apply and Section 1113 should be followed, the Unions rely upon Section 10.01(h) of the Asset Purchase Agreement as the provision which modifies the Bargaining Agreements. Specifically, the Unions point to the language of the Asset Purchase Agreement, Section 10.01(h)(ii), which made it a condition to New Anchor's obligation to close that either the retroactive wage adjustment be waived or the Bankruptcy Court issue an order providing for the assumption and assignment *without the acceleration of the deferred wage increases.* Section 10.01(h) provided, in pertinent part, that as a condition to closing:

> any retroactive (but not prospective) payments of wage increases forfeited in prior periods under such agreements as a result of the consummation of the transactions contemplated hereby shall have been waived or the Bankruptcy Court shall have issued an order, not subject to stay, that [Anchor] may assign and the applicable Buyer may assume such collective bargaining agreements without any acceleration of

the deferred wage increases negotiated under the current agreements.

*See* D.I. 13 at 103.

First, the waiver is one element of a multi-provision New Agreement entered into between the Unions and New Anchor and Owens. The Debtor is not even a party to the New Agreement. Furthermore, the New Agreement explicitly states that its terms become effective only upon the occurrence of the closing (i.e. following the assumption and assignment, when Debtor is no longer a party to the Bargaining Agreements). The Court concurs with the Bankruptcy Court's determination that, in effect, the New Agreement is a post-assignment modification to the Bargaining Agreements, not involving Debtor or Section 1113 of the Code. Further, since a court order was not sought, the Court will not address the implication that it may have had here. The Asset Purchase Agreement provisions make it clear that absent an agreement providing otherwise, the Buyers became fully subject to all the terms of the Bargaining Agreements and no liability remained with Debtor.

The Unions were not obligated to enter into the New Agreement with New Anchor and Owens, and thereby, release rights which they had under the Bargaining Agreements. The Unions could have refused to make any concessions to New Anchor and Owens. If New Anchor and Owens did not elect to waive the Asset Purchase Agreement, Section 10.01(h) condition to closing, then presumably *the transaction would have aborted.* Given the Debtor's precarious financial condition at the time, the Unions apparently recognized the advantage of making the concession by entering into the New Agreement in order to ensure the continued operation of the facilities and employment of their members.

In sum, the Debtor has not sought and the Bankruptcy Court has not ordered any modification of the Bargaining Agreements. Consequently, the Court agrees with the Bankruptcy Court's conclusion that New Anchor and Owens assumed full liability for all the

---

**3.** In *In re Leslie Fay Companies, Inc.,* 168 B.R. 294, 300, n. 6 (Bankr.S.D.N.Y.1994), the court referred to the legislative history of Section 1113 as "scant, consisting of little more than self-serving statements by opposing partisans." No committee reports were issued on the statute.

terms of the Bargaining Agreements, and a post-assignment modification of the Bargaining Agreements was effected in an arm's length negotiated New Agreement between the Unions and New Anchor and Owens.

## CONCLUSION

For the reasons discussed, the Court will affirm the Bankruptcy Court's Order of February 4, 1998.

An appropriate Order will be entered.