United States Court of Appeals
For the First Circuit


No. 96-1010

UNITED FOOD AND COMMERCIAL WORKERS UNION, 
LOCAL 328, AFL-CIO,

Plaintiff-Appellant,

v.

ALMAC'S INC., et al.,

Defendants-Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge] 



Before

Lynch, Circuit Judge, 

Coffin, Senior Circuit Judge, 

and Cummings,* Circuit Judge. 



Warren H. Pyle, with whom Angoff, Goldman, Manning, Pyle & 
Wanger, P.C. was on brief, for appellant. 
Joel D. Applebaum, with whom Pepper, Hamilton & Scheetz was on 
brief, for appellee.



July 24, 1996


 

*Of the Seventh Circuit, sitting by designation.

LYNCH, Circuit Judge. This case raises an important LYNCH, Circuit Judge. 

issue at the intersection of federal bankruptcy law and

federal labor policy. Almac's, Inc., a New England grocery

store chain that employed over 3000 people petitioned in 1993

for reorganization under Chapter 11 of the Bankruptcy Code,

11 U.S.C. 1101 et seq. Over the objection of the union 

representing the employees, the bankruptcy court in a series

of emergency interim orders allowed the debtor to reduce the

employees' wages by nine to fifteen percent for almost a

year. The employees claim to have lost over $9,630,000 in

wages, but these emergency interim modifications to the

collective bargaining agreement permitted the company to

survive and ultimately to reorganize into a successor

company. The union ultimately agreed to a new collective

bargaining agreement with the successor company. But it

sought the $9,630,000 lost in the interim in wages,

characterizing the interim modifications as a "partial

rejection" of an executory contract (the bargaining

agreement) within the meaning of 11 U.S.C. 365. We hold

that Congress did not intend for emergency interim

modifications ordered under 11 U.S.C. 1113(e) to be treated

as "rejections" of the collective bargaining agreement.

Accordingly, the union and its members are not entitled here

to their lost wages and we affirm.

-2- -2-

I

Local 328,United Food and CommercialWorkers Union, AFL-

CIO ("Local 328") and Almac's, Inc. ("Almacs") were parties

to a collective bargaining agreement covering the period June

7, 1993 to June 1, 1996 (the "Agreement"). The Agreement

delineated the wages, benefits, and other terms and

conditions of employment for approximately three thousand

Almacs employees in Rhode Island and Massachusetts. On

August 6, 1993, shortly after the Agreement went into effect,

Almacs petitioned for reorganization under Chapter 11 of the

Bankruptcy Code. In October 1993, after reducing the wages

and benefits of unrepresented employees, Almacs moved under

section 1113(e) to implement interim modifications to the

wages and benefits of employees covered by the Agreement.

The bankruptcy court found that "the requested

modifications [were] not only essential to the continued

operations of Almac's, but [were] vital to any hope of a

successful reorganization." It granted Almacs' request for

both a fifteen percent reduction in the wages of all

employees covered by the Agreement and a reduction in wages

and benefits for employees who had been downgraded to part-

time positions. This modification was effective through

December 31, 1993.

Almacs requested and received consecutive extensions

to the modification, although the court reduced the wage

-3- -3-

modification from fifteen percent to twelve percent and then

to nine percent of the wages originally in effect. The court

periodically granted modifications effective through

September 30, 1994. Throughout this time period, Local 328

and Almacs were involved in negotiations over the fate of the

Agreement. Almacs never filed an application under section

1113(b) to reject the Agreement.

Following each modification order, Local 328 and two

employees, as class representatives for the Almacs employees,

filed claims for the difference between the modified wage and

benefit rates and those provided under the Agreement. The

total amount ultimately claimed was "at least $9,630,000."

Although from the face of the claims it appears that they

were initially pressed as administrative expense claims,

Local 328 later agreed to assert them only as general

unsecured claims. Local 328 does not now purport to assert

an administrative claim.

Almacs objected to the claims of Local 328 and the

class representatives. After a hearing on October 21, 1994,

the bankruptcy court sustained Almacs' objections. Local 328

and the employee claimants appealed to the district court.1

 

1. After Local 328 filed the notice of appeal, a plan of
reorganization was ratified by the creditor groups and then
approved by the bankruptcy court on November 8, 1994. Under
the plan, Almacs' assets would be sold to a newly formed
company, New Almac's, Inc. ("New Almacs"). New Almacs would
continue to operate Almacs' business. Local 328 had entered
into a new collective bargaining agreement with New Almacs

-4- -4-

The district court affirmed, reasoning that the only basis

for recognizing a claim would require viewing the

modifications to the Agreement as amounting to a rejection

and hence a breach of an executory contract, but because

interim wage modifications under section 1113(e) are

"judicially sanctioned, no breach occurs, and, as a result,

no viable claim arises."2 Local 328 has appealed from that

decision.

II

The bankruptcy court's order is subject to independent

review here, and we accept all bankruptcy court findings of

fact unless "clearly erroneous" and review rulings of law de 

novo. In re LaRoche, 969 F.2d 1299, 1301 (1st Cir. 1992). 

Because there was no appeal from the bankruptcy court's

interim orders, we accept that court's findings of fact in

 

which took effect upon approval of the plan of
reorganization.
In connection with the approval of the plan of
reorganization, Local 328 and Almacs stipulated to the
rejection of the (original) Agreement by Almacs. In the
stipulation, Local 328 waived any claim for damages based on
this consensual rejection of the Agreement, but preserved the
issue raised in this appeal. No petition for rejection was
submitted to the court.

2. The district court also reasoned that Local 328's claim
could not be sustained because it would have to be paid
before a plan of reorganization could be approved under
section 1129(a)(9)(A), thus putting the employer into a
Catch-22 situation. Both parties agree that this is a
correct statement of the law only with respect to
administrative expense claims. Local 328 does not argue on
appeal that it has an administrative claim.

-5- -5-

support of those orders as final and deem there to be no

questions about whether those orders were issued in

conformance with the statute or about the duration of the

emergency conditions.

At the outset, it is important to note the precise

nature of Local 328's claim. Local 328 argues on appeal that

it has a general unsecured claim, based on the

characterization of the interim modifications as "partial

rejections" of the Agreement. Local 328 does not assert here 

a claim for administrative expenses under section 503 for

wages for post-petition work. Nor does Local 328 assert a

claim based on the consensual rejection of the Agreement

while its appeal of this issue was pending before the

district court. Finally, Local 328 does not argue that the

bankruptcy court lacked authority to order the interim

modifications.

III

A brief review of the context in which section 1113

was enacted is helpful to understand Local 328's argument on

appeal. Under section 365 of the Bankruptcy Code, a trustee

(or the debtor-in-possession) has the choice, subject to

court approval, of either assuming or rejecting an executory

contract. The rejection of an executory contract

"constitutes a breach of such contract . . . immediately

before the date of the filing of the petition." 11 U.S.C. 

-6- -6-

365(g)(1). In 1984, the Supreme Court issued a decision

interpreting section 365, one portion of which prompted

Congress to enact section 1113 of the Bankruptcy Code. In

NLRB v. Bildisco & Bildisco, 465 U.S. 513 (1984), the Supreme 

Court held that collective bargaining agreements were

executory contracts for purposes of section 365, but that due

to the special nature of such agreements, the rejection of a

collective bargaining agreement should be governed by a

standard more strict than that applicable to other kinds of

contracts. See id. at 522 & n.6, 526. The Court suggested 

that the rejection of a collective bargaining agreement would

result in a general unsecured claim against the bankruptcy

estate. Id. at 530-31 & n.12; see also In re Continental Air 

Lines Corp., 901 F.2d 1259, 1265 (5th Cir. 1990). These 

holdings were not what motivated the enactment of section

1113.

Congress's primary concern in enacting section 1113

was with one of the Court's other holdings in Bildisco -- 

that a debtor did not commit an unfair labor practice by

making unilateral changes to the terms and conditions of

employment, prior to formally rejecting a collective

bargaining agreement, because the agreement was no longer

enforceable upon the filing of a bankruptcy petition. 465

U.S. at 534. Under section 1113, a collective bargaining

agreement remains in effect after the filing of a petition in

-7- -7-

bankruptcy. A trustee may not make unilateral changes in the

terms or conditions of a collective bargaining agreement

unless the court fails to rule on an application for

rejection within the required time frame. 11 U.S.C. 

1113(d)(2) & (f).

Congress recognized in enacting section 1113(e) that

on occasion a debtor may require emergency relief from the

collective bargaining agreement prior to rejection,

assumption or agreed-upon modification of the agreement.

Section 1113(e) thus provides:

If during a period when the collective
bargaining agreement continues in effect, and if
essential to the continuation of the debtor's
business, or in order to avoid irreparable
damage to the estate, the court, after notice
and a hearing, may authorize the trustee to
implement interim changes in the terms,
conditions, wages, benefits, or work rules
provided by a collective bargaining agreement.
Any hearing under this paragraph shall be
scheduled in accordance with the needs of the
trustee. The implementation of such interim
changes shall not render the application for
rejection moot.

11 U.S.C. 1113(e).3 Local 328 claims that the interim

 

3. The other provisions of section 1113 codify the standards
that must be met before a collective bargaining agreement may
be rejected. In Bildisco, the Supreme Court held that 
rejection of a collective bargaining agreement was permitted
if the "debtor can show that the collective-bargaining
agreement burdens the estate, and that after careful
scrutiny, the equities balance in favor of rejecting the
labor contract." 465 U.S. at 526. The Court also held that
"[b]efore acting on a petition to modify or reject a
collective-bargaining agreement . . . the Bankruptcy Court
should be persuaded that reasonable efforts to negotiate a
voluntary modification have been made and are not likely to

-8- -8-

modifications permitted by the statute should be treated as

partial rejections of the collective bargaining agreement.

From this, it argues it is entitled to rejection damages

under section 365.

We note first that even were we to accept Local 328's

premise that the interim modifications constitute a partial

rejection, section 1113, which governs the rejection of

collective bargaining agreements, is silent as to how such a

rejection should be treated under section 365.4 Indeed,

courts have divided over whether a claim for damages is

permitted at all after the rejection of a collective

bargaining agreement under section 1113. Compare Truck 

Drivers Local 807 v. Carey Transp., Inc., 816 F.2d 82, 93 (2d 

 

produce a prompt and satisfactory solution." Id. Under 
section 1113, before filing a petition to reject a bargaining
agreement, the debtor must make a proposal to the union,
"based on the most complete and reliable information
available at the time of such proposal, which provides for
those necessary modifications in the employees benefits and
protections that are necessary to permit the reorganization
of the debtor and assures that all creditors, the debtor and
all of the affected parties are treated fairly and
equitably," and must provide the union with the information
necessary to evaluate the proposal. 11 U.S.C. 1113(b)(1).
A court may approve an application for rejection only upon
finding that the debtor or trustee has made the required
proposal, that the union refused to accept the proposal
without good cause, and that the "balance of equities clearly
favors rejection of [the] agreement." 11 U.S.C. 1113(c).
Because Almacs never filed an application to reject the
Agreement, these provisions were not invoked.

4. Because the relevant language of section 365(g) has not
changed since Bildisco, collective bargaining agreements 
would appear still to be subject to the section's general
provisions.

-9- -9-

Cir. 1987) (in balancing the equities to determine whether an

employer was permitted to reject a collective bargaining

agreement under section 1113, one factor to consider was "the

possibility and likely effect of any employee claims for

breach of contract if rejection is approved"); In re Maxwell 

Newspapers, Inc., 146 B.R. 920, 934 (Bankr. S.D.N.Y.) (same), 

rev'd on other grounds, 149 B.R. 334 (S.D.N.Y.), aff'd in 

part and rev'd in part, 981 F.2d 85 (2d Cir. 1992); In re 

Texas Sheet Metals, Inc., 90 B.R. 260, 272-73 (Bankr. S.D. 

Tex. 1988) (same); and In re Moline Corp., 144 B.R. 75, 78-79 

(Bankr. N.D. Ill. 1992) (making same assumption and

suggesting that because section 1113 says nothing about

effect of assumption or rejection, "[section] 365 must apply

to fill in the gap") with In re Blue Diamond Coal Co., 147 

B.R. 720, 727-28 (Bankr. E.D. Tenn. 1992), aff'd, 160 B.R. 

574, 576-77 (E.D. Tenn. 1993) (rejecting claim for damages

based on the rejection of a collective bargaining agreement).

Cf. Mass. Air Conditioning & Heating Corp. v. McCoy, 196 B.R. 

659 (D. Mass. 1996) (assumption of collective bargaining

agreement governed by section 365).

We do not reach that question here, however, because

we hold that the language and structure of section 1113 do

not permit interim changes authorized thereunder to be

construed as "rejections" for purposes of section 365(g).

-10- -10-

We turn to the unambiguous text of the statute, giving

effect to its plain meaning. See Lomas Mortgage, Inc. v. 

Louis, 82 F.3d 1, 3 (1st Cir. 1996). Section 1113(e) 

provides that the trustee may implement "interim changes" and

that "interim changes shall not render the application for

rejection moot." Section 1113(e) clearly speaks of

"rejection" and "interim changes" as two different types of

actions. By choosing a different word, "change," to describe

the interim action, Congress surely intended for that action

not to have the consequences that would follow from a 

"rejection." Indeed, section 1113(e) is explicit that

"implementation of such interim changes shall not render the

application for rejection moot." That "interim changes" do

not moot a "rejection" establishes that the former

constitutes relief different from the latter. 

The framework of section 1113 also shows that "interim

changes" are not the same species as a "rejection." The

statute, by setting forth the procedures to be followed

before a debtor-in-possession "may assume or reject a

collective bargaining agreement," 11 U.S.C. 1113(a), or

"reach mutually satisfactory modifications of such

agreement," 11 U.S.C. 1113(b)(2), contemplates three final

actions that may be taken with respect to a particular

collective bargaining agreement. "Rejection" of the whole

agreement is one of these final actions. 

-11- -11-

Each of the extensive provisions regarding rejection

suggests that a collective bargaining agreement is only

"rejected" once, in its entirety, not in bits and pieces.

This is because the debtor must make a proposal to modify the

agreement and meet with the union representatives to attempt

to reach consensus before "seeking rejection of [the]

collective bargaining agreement." 11 U.S.C. 1113(b).

Further, the court must make certain findings before

approving a petition for rejection. Id. 1113(c). Whatever 

the effects of the rejection of a collective bargaining

agreement under section 1113, rejection is an act that

involves a final repudiation of the entire agreement.

Interim changes under section 1113(e), on the other hand, 

are, by definition, not final. They only are implemented

pending the final act of assumption, modification or

rejection, while the agreement still remains otherwise in

effect.

Finally, by providing different standards for the

approval of "rejections" and "interim changes," Congress

clearly intended not to treat the latter as merely a category

of the former. The standards governing rejections have both

a procedural component and a substantive component. Before

the debtor may even file an application to reject a

bargaining agreement, it must make a proposal to the union

for modifications to the contract, and the application cannot

-12- -12-

be approved unless the union has rejected the proposal

without good cause. 11 U.S.C. 1113(b)(1) & (c)(2). The

debtor must also negotiate with the union in an attempt to

reach mutually satisfactory modifications. Id. 1113(b)(2). 

The substantive component requires that the debtor's initial

proposal encompass only those modifications "necessary to

permit the reorganization of the debtor." Id. 1113(b)(1). 

Because a plan of reorganization may not be confirmed if it

is likely to be followed by liquidation or the "need for

further financial reorganization," id. 1129(a)(11), the 

modifications are proposed with a view to the long-run

success of the debtor's business. 

The standards for "interim changes," on the other

hand, deal with the short term. Only the basic procedural

safeguards, "notice and a hearing," are required. The

substantive standard is that the changes must be "essential

to the continuation of the debtor's business." Id.  

1113(e). This language suggests that "interim changes" are

only permitted under emergency conditions, when the debtor

otherwise would likely collapse. See In re Salt Creek 

Freightways, 46 B.R. 347, 350 (Bankr. D. Wy. 1985); In re 

Almac's, Inc., 159 B.R. 665, 666 (Bankr. D.R.I. 1993). The 

scope of "interim changes" is more limited than the

modifications "necessary for reorganization." See Martha S. 

West, Life After Bildisco: Section 1113 and the Duty to 

-13- -13-

Bargain in Good Faith, 47 Ohio St. L.J. 65, 146 (1985). 

Because "interim changes" are ordered to ensure the short-

term viability of the debtor, they do not dictate the final

decision to assume, reject or mutually modify the original

collective bargaining agreement.

If Congress had intended the result Local 328 urges,

it could easily have provided so by inserting an explicit

provision allowing for a claim, by calling "interim changes"

"partial rejections," or by using other language from which

it could be definitively inferred that "interim changes" were

"rejections" subject to the consequences delineated in

section 365. The language Congress actually used does not

suggest this treatment. There is simply no evidence that

Congress intended "interim changes" to be the same as

"rejection."

Local 328 argues that not treating the section 1113(e)

changes here as a rejection would lead to an unreasonable

outcome because the modifications in this case had the same

effect as a rejection. See Massachusetts v. Blackstone 

Valley Elec. Co., 67 F.3d 981, 986 (1st Cir. 1995) ("[P]lain 

meaning must govern [a statute's] application, unless a

palpably unreasonable outcome would result."). Without

adopting Local 328's premise, we conclude that the result we

reach is far from unreasonable. Congress could have thought

the denial of a remedy to compensate for interim

-14- -14-

modifications was a reasonable quid pro quo to the debtor, in 

exchange for the protective benefits that flow to employees

from allowing the collective bargaining agreement to remain

in effect following the filing of a Chapter 11 petition.

Before Congress enacted section 1113, a debtor was permitted

to make unilateral modifications to a collective bargaining

agreement after filing a petition in bankruptcy and such

modification did not constitute an unfair labor practice.

Bildisco, 465 U.S. at 534. In section 1113, Congress 

provided that collective bargaining agreements are

enforceable against the debtor after the filing of a petition

for reorganization. 11 U.S.C. 1113(c), (e) & (f); 5

Collier on Bankruptcy 1113.01[4][b], at 1113-14 to 1113-15 

(Lawrence P. King ed., 15th ed. 1995). In exchange for this

heightened protection, Congress could reasonably have

required employees to accept decreased wages and benefits in

an emergency before any final action on the collective

bargaining agreement is taken, without providing for the

employees to recover all or part of the wages and benefits

lost in the interim reductions.

The interim changes authorized by the bankruptcy court

under section 1113(e) were not, in and of themselves,

"rejections" of the Agreement within the meaning of the

Bankruptcy Code.

Affirmed. 

-15- -15-